FOR THE
DISTRICT OF MASSACHUSETTS

MICHAEL KEVIN DuPONT,
PETITIONER

V.

DAVID NOLAN,
RESPONDENT

No. 04-11431-GAO

* * * * * * * * * *

RESPONDENT's 01-P-1792 BRIEF EXHIBIT OPPOSING GROUNDS 1, 3, 4, 5, 6, 7, 15 ON THE MERITS AND NOT CONTESTING STATE HABEAS CORPUS EXHAUSTION REMEDY

Now comes the petitioner and files Respondents DuPont v Commissioner 01-P-1792 brief in opposition to the merits of grounds 1, 3, 4, 5, 6, 7, 15 as an exhibit showing the Respondent Failed to contest MGL CHAPTER 248, section 1 as the appropriate state habeas corpus post-conviction remedy for exhaustion.

This exhibit sows Ass Attorney General Susan Reardon lied and concealed STATE Records from her own Kept. of Correction client.

September 10, 2004    Respectfully Submitted

copy of cover sheet
served on AAG Reardon
Since she Already HAS
this exhibit 01-P-1792
Record

Michael Kevin DuPont Prose
P.O. Box 100
S. Walpole Md. 02091

...LTH OF MASSACHUSETTS

...PPEALS COURT

A.C. #0...

...HAEL DUPONT,
Appellant

v.

...OF CORRECTION, ET.AL,
Appellees

...FROM A JUDGMENT OF
...UPERIOR COURT

...OF APPELLEES

...TY ANKERS WHITE
...ial Assistant Attorney Gener...

...d Slade
...encing Counsel
...rtment of Correction
...ranklin Street
...e 600
...on, MA   02110-1300
...727-3300 x 164
...#466060

...z Van Meek
...al Counsel
...e Board
...rmwood Street
...T, MA 02210
...727-3271
...565124

...July 22, 2002

TABLE OF CONTENTS

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 8

    I.   The Superior Court Properly Found That a
       Crime Committed While Petitioner Was
       Incarcerated at a Pre-release Center Is a
       Crime While "Confined in a Correctional
       Institution of the Commonwealth". . . . . . . 8

    II.  The Statutory Exclusion of Good Time for a
       Crime Committed While Incarcerated Does Not
       Create an Aggravating Element of the
       Underlying Crime of Armed Robbery. . . . . . . 11

    III. The Holding of Lynch, Petitioner, Does Not
       Mandate That Dupont Be Credited with
       Statutory Good Time for His Crime While
       Incarcerated. . . . . . . . . . . . . . . . . . 14

    Iv.  The Superior Court Properly Dismissed the
       Petition for Writ of Habeas Corpus as to the
       Massachusetts Parole Board Because the Issue
       as to Whether the Parole Violation Warrant
       Was Properly Lodged Was Not Germane to the
       Resolution of the Underlying Claim That the
       Appellant Was Entitled to Immediate Release
       from Custody. . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

Apprendi v. New Jersey, 530 U.S. 466 (2000) . . . . . 12, 13

Bouie v. City of Columbia, 378 U.S. 347, (1964) . . . . 9,10

Hennessey v. Superintendent, 386 Mass. 848 (1982) . . . . 17

Lynch, Petitioner, 379 Mass. 757 (1980) . . . . . . . 14-16

Nimblett v. Commissioner, 20 Mass. App. 988 (1985)  . . 8-11

Patrick v. Commissioner, 352 Mass. 666, 668 (1967)  . . . 9

Stewart, petitioner, 411 Mass. 566, 569 (1992)  . . . . . 17

Statutes and Constitutional Authorities

G.L. c. 127, § 129  . . . . . . . . . . . . 8, 9, 11, 12

G.L. c. 127, § 48 . . . . . . . . . . . . . . . . . . 8

G.L. c. 265, § 17 . . . . . . . . . . . . . . . . . . 13

St. 1959, c. 445, § 2 . . . . . . . . . . . . . . . . 10

U.S. Const., Art. I, § 10, cl. 1 . . . . . . . . . . . 9

U.S. Const., Art. I, § 9, cl. 3 . . . . . . . . . . . . 9

## ISSUES PRESENTED

I. DID THE SUPERIOR COURT PROPERLY FIND THAT A CRIME COMMITTED WHILE DUPONT WAS INCARCERATED AT A PRE-RELEASE CENTER IS A CRIME WHILE "CONFINED IN A CORRECTIONAL INSTITUTION OF THE COMMONWEALTH"?

II. DOES THE STATUTORY EXCLUSION OF GOOD TIME FOR A CRIME COMMITTED WHILE INCARCERATED CREATE AN AGGRAVATING ELEMENT OF THE UNDERLYING CRIME OF ARMED ROBBERY?

III. DOES THE HOLDING OF <u>LYNCH, PETITIONER</u> MANDATE THAT DUPONT BE CREDITED WITH STATUTORY GOOD TIME FOR THE CRIME HE COMMITTED WHILE INCARCERATED?

IV. DID THE SUPERIOR COURT PROPERLY DISMISS THE PETITION FOR WRIT OF HABEAS CORPUS AS TO THE MASSACHUSETTS PAROLE BOARD BECAUSE THE ISSUE AS TO WHETHER THE PAROLE VIOLATION WARRANT WAS PROPERLY LODGED WAS NOT GERMANE TO THE RESOLUTION OF THE UNDERLYING CLAIM THAT DUPONT WAS ENTITLED TO IMMEDIATE RELEASE FROM CUSTODY?

## STATEMENT OF THE CASE [1]

On November 10, 2000, Michael DuPont was sentenced to twenty years to twenty years and one day for an Armed Robbery committed on March 7, 1985. Commonwealth v. DuPont, Middlesex Superior Court Indictment No. 85-987.

On January 29, 2001, Michael DuPont filed a Petition for a Writ of Habeas Corpus against the Commissioner of the Massachusetts Department of Correction and the Massachusetts Parole Board. Dupont v. Commissioner of Correction, et. al., Worcester Superior Court C.A. 2001-00209 (App. Vol I, pp. 171-205).

On March 20, 2001, the respondent Commissioner of Correction (hereinafter "DOC") filed a Return, and an Opposition to the Petition for a Writ of Habeas Corpus (App. Vol II, pp. 241-243).

On April 2, 2001, DOC filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment and Supporting Memorandum and Affidavit of Janice Hebert (App. Vol II, pp. 253-274).

On April 3, 2001, a hearing was held on the Petition,

---

[1] References in the brief will be as follows: to the Record Appendix will be by volume and page as (App. Vol. _, p. _) and to the Petitioner/Appellant Brief as (Pet. Br. _).

and the matter was continued to May 2, 2001.

On May 2, 2001, a hearing was held on the matter and on May 4, 2001, the court denied the Petition for a Writ of Habeas Corpus and allowed DOC's Motion for Summary Judgment (App. Vol I, pp. 9-15).

DuPont filed a timely Notice of Appeal on June 1, 2001. The appeal was docketed in the Appeals Court on December 17, 2001. DuPont claims that (1) he did not have notice that a crime committed while he was serving his sentence at a halfway house would be considered a crime committed while incarcerated and thus not entitled to statutory good time; (2) that categorizing such a crime as a crime committed while incarcerated is an aggravating element of the underlying crime requiring inclusion in the indictment and proof beyond a reasonable doubt; (3) that his claim is the same as the claim in Lynch, petitioner because his parole revocation was unconstitutional; and (4) that a parole violation warrant is not properly lodged against him.

## STATEMENT OF FACTS[2]

On October 27, 1971, Michael DuPont was found guilty after trial and sentenced to 15-30 years for Armed Robbery, Worcester Indictment # 47196. The 1971 sentence and several concurrent 1972 sentences were denoted by the Department of Correction as commitment number W-33343.

On November 7, 1980, DuPont was paroled on the 1971 and concurrent 1972 charges, on December 10, 1980, DuPont's parole was revoked, and on December 22, 1980, DuPont was returned as a parole violator as a result of new arrests.

On March 12, 1981, DuPont received two concurrent sentences of 3-10 years and one concurrent sentence of 3-5 years, all from and after sentence now serving. These convictions for crimes committed on parole were denoted by the Department of Correction as commitment number W-38655.

On December 23, 1981, DuPont was paroled from the 1971 and 1972 sentences (W-33343) to the consecutive 1981 sentences (W-38655) and on May 21, 1984, DuPont was paroled to the street from the 1981 sentences.

On June 23, 1984, DuPont was arrested in Revere, charged with Receiving Stolen Property, Possession of Drugs,

---

[2] All facts taken from Affidavit of Janice Hebert, App. Vol II, pp. 269-274.

4

and Unlawful Possession of a Firearm. On July 9, 1984, parole revocation warrants were issued for DuPont (on both W-33343 and W38655).

On August 14, 1984, the parole violation warrant on W-33343 was served and DuPont was returned to the custody of the Department of Correction as a parole violator (effective July 31, 1984). The parole violation warrant on W-38655 was lodged as a detainer.

On January 22, 1985, the parole violation warrant on W-38655 was withdrawn and he was returned to parole status on W-38655 although he remained incarcerated on w-33343. On February 12, 1985, DuPont was transferred to the 577 House (a pre-release halfway house).

On March 7, 1985, DuPont was arrested for Armed Robbery, Assault and Battery by Means of a Dangerous Weapon, Armed Assault with Intent to Kill, Carrying a Firearm without a License and Assault and Battery by Means of a Dangerous Weapon for offenses alleged to have occurred that day and he was returned to MCI-Walpole on W-33343. A parole violation warrant was lodged on W-38655.

On August 28, 1986, DuPont was sentenced in Middlesex Superior Court on the Armed Robbery to 30-40 years from and after sentence now serving and to lesser sentences on the other charges. The 1986 convictions for crimes committed

5

while incarcerated (on W-33343) were denoted by the Department of Correction as commitment number W-44692.

On December 4, 1987, after a motion for a new trial was granted, DuPont pled guilty and was re-sentenced to 10-18 years for Armed Robbery, Worcester # 47196 (W-33343).

On February 4, 1988, DuPont was discharged from commitment number W-33343 (retroactive to 1/26/85) and the sentences for the 1985 crimes (W-44692) were invoked retroactive to January 26, 1985.

On August 24, 1998, DuPont was granted a new trial on the 1985 charges and on September 29, 1998, after a bail hearing, DuPont was held in custody as a pre-trial detainee on the 1985 charges.

On December 13, 1999, DuPont pled guilty in Middlesex Superior Court (Zobel, J.) to the seven 1985 charges for which he had originally been convicted in 1986. Sentencing was deferred.

On March 14, 2000, the Middlesex Superior (Zobel, J.) sentenced DuPont to thirty to forty years for the 1985 Armed Robbery and DuPont was returned to the custody of the Department of Correction as a sentenced inmate.[3]

---

[3] The sentence imposed on March 14, 2000 was apparently imposed on a temporary basis and the parties were requested to advise the court as to what revison might be necessary to achieve what the court intended.

6

On November 10, 2000, DuPont was re-sentenced on the 1985 Armed Robbery to a term of twenty years to twenty years and one day (and lesser concurrent sentences on the other six charges; all of those lesser sentences have been completed).

In calculating DuPont's sentence on the 1985 Armed Robbery, the Department of Correction had credited DuPont with 5767 days served from January 26, 1985 (the retroactive expiration of the 1971 sentences, see ¶ 22 above) to his November 10, 2000 re-sentencing.

By applying 5767 days of credit to the November 10, 2000 sentencing date, the Department of Correction had calculated an effective date of sentence of January 26, 1985 and a maximum term of January 26, 2005.

From the maximum date of January 26, 2005, the Department of Correction has deducted five days of earned good time, resulting in a January 21, 2005 date of discharge from the sentence for the 1985 Armed Robbery.[4]

---

[4] On April 25, 2000, the credit for time previously served was changed to 5727 days pursuant to a corrected mittimus (App. Vol., p 16.). This had the effect of pushing the effective date of sentence back to March 7, 1985 and the maximum term of the sentence to March 7, 2005. In 2002, DuPont earned an additional 2.5 days of earned good time, which when added to the five days he had previously received reduces his good conduct discharge (GCD) date to February 27, 2005.

7

<u>ARGUMENT</u>

I. <u>THE SUPERIOR COURT PROPERLY FOUND THAT A CRIME COMMITTED
WHILE DUPONT WAS INCARCERATED AT A PRE-RELEASE CENTER IS A
CRIME WHILE "CONFINED IN A CORRECTIONAL INSTITUTION OF THE
COMMONWEALTH"</u>.

Dupont asserts that his 1985 Armed Robbery is not
governed by the automatic forfeiture provisions of G.L. c.
127, § 129 because, at the time of the crime, he was not "a
prisoner confined in a correctional institution of the
commonwealth."[5] Petition, ¶¶ 31-37. The question of whether
a prisoner who is in a pre-release program, as DuPont was on
March 7, 1985, is "a prisoner confined in a correctional
institution" has been been answered in the affirmative by
the Appeals Court: "a person who is permitted to be outside
the physical confines of a State correctional institution on
a work-release program established under G.L. c. 127, § 48 .
. . must be taken to be 'confined within a correctional
institution of the commonwealth' within the meaning and for
the purpose of the first sentence of the third paragraph of
§ 129." <u>Nimblett v. Commissioner of Correction</u>, 20 Mass.
App. 988-9 (1985).

_____

[5] G.L. c. 127, § 129 was repealed by St. 1993, c.
432, § 10. The terms of § 129 still apply to crimes,
such as those at issue here, that were committed before
the effective date of the repeal, July 1, 1994.

The Superior Court properly found that when DuPont committed new crimes, "(i)t is clear that DuPont was a resident of 577 (House) on March 7, 1985 serving his sentence for Armed Robbery . . .(and that) (s)tatutory credits for good time 'are forfeited upon the occurrence of two events: (1) the commission of an offense by the prisoner and (2) the subsequent conviction and sentence therefor . . .' (citing Patrick v. Commissioner, 352 Mass. 666, 668 [1967])" and that, pursuant to Nimblett, a crime committed while a resident of 577 House is a crime while confined for the purposes of § 129's proscription on statutory good time for crimes committed while confined.

DuPont's claim of a lack of notice as to the scope of the first sentence of the third paragraph of § 129 (which excludes statutory good time for a crime committed during the term of imprisonment) is essentially a claim that to apply the construction articulated in Nimblett would constitute a violation of the prohibition against ex post facto laws.[6] DuPont argues that the holding of Nimblett was an "unforeseeable enlargement of a criminal statute" which, if applied retroactively would "operate precisely like an ex post facto law" (citing Bouie v. City of Columbia, 378 U.S.

―――――――――――

[6] U.S. Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1

9

interpreted by a court. There is no merit to such an argument.

Nimblett itself addressed the claim made here by DuPont, namely that he had no notice that a sentence for his crime would not receive statutory good time. As the court concluded: "(o)nce the proper interpretation of the third paragraph of said § 129 is determined (as we have done for the first time in this opinion), any possible claim that that section constitutes an ex post facto law falls by the wayside." Nimblett at 989.

The court in Nimblett having properly interpreted the relevant language in § 129 forecloses DuPont's argument which amounts to a claim that although, of course, he knew that Armed Robbery was a crime and that it carried a penalty of up to life in prison, he could not have known before he committed the crime that a sentence for that crime that was for a term of years would not receive statutory good time.

II. THE STATUTORY EXCLUSION OF GOOD TIME FOR A CRIME COMMITTED WHILE INCARCERATED DOES NOT CREATE AN AGGRAVATING ELEMENT OF THE UNDERLYING CRIME OF ARMED ROBBERY.

DuPont asserts that the statutory exclusion of good time for a crime committed while incarcerated constitutes an element of an aggravated offense and, as a corollary, that such an element must be included as an element in the

11

indictment and be subject to proof beyond a reasonable doubt.

DuPont's claim is, however, misplaced. The statute providing for reduction of sentences for good conduct explicitly disallows statutory good time for crimes committed while incarcerated:

> If, during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any deductions hereunder from the new sentence or sentences of imprisonment.

G.L. c. 127, § 129.

The exception for crimes committed while incarcerated from the statutory scheme providing for reduction of sentences for good conduct while serving the sentence does not create an aggravated offense nor does it increase the maximum penalty which may be imposed upon conviction of the underlying offense.

DuPont seeks to rely on the recent leading Supreme Court case of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) to support his claim that the exception creates an aggravated crime. <u>Apprendi</u> is a definitive holding on the question of what constitutes an element of an offense subjecting a defendant to a higher maximum penalty. However, the application of the <u>Apprendi</u> analysis to the instant situation leads clearly to the opposite conclusion, namely

12

that the legislative prohibition on applying statutory good time to a crime committed while incarcerated did not create an aggravated crime.

The heart of the Apprendi analysis is whether a factual determination authorizes an increase in the maximum penalty which may be imposed upon conviction. Id., p. 469. In Apprendi, the determination as to whether an offense was committed with a biased purpose exposed the defendant to a sentence of twice the maximum that existed without the biased purpose. Id., p. 470.

In DuPont's situation, whether the crime was committed while incarcerated or not had no impact on the maximum sentence available to the sentencing judge. In each case upon conviction of the Armed Robbery committed on March 7, 1985, pursuant to G.L. c. 265, § 17, DuPont was subject to a sentence of life in prison or any term of years. Thus DuPont was subject to an unlimited maximum term and subject to be sentenced to any term of years. Whether the crime was committed while incarcerated or not therefore had absolutely no effect on the maximum penalty which could be imposed.

The very essence of the Apprendi holding and analysis is focused on whether a factual determination increases the maximum penalty a convicted defendant faces: if it does, the fact is an element of the offense; if it does not, the fact

13

is not an element.

The fact that DuPont's crime was committed while he was incarcerated does have a significant effect on how much time he actually serves on the sentence imposed. However, since the fact of incarceration did not increase the maximum penalty, particularly where, as here, the judge could impose any term of years, the more appropriate inquiry would focus on whether, at the time of sentencing, the judge chose the sentence he did knowing that such sentence would not receive statutory good time.[7]

III. <u>THE HOLDING OF LYNCH, PETITIONER, DOES NOT MANDATE THAT DUPONT BE CREDITED WITH STATUTORY GOOD TIME FOR HIS CRIME WHILE INCARCERATED</u>.

DuPont argues that the holding of <u>Lynch, Petitioner,</u> 379 Mass. 757 (1980) compels a conclusion that he is entitled to receive statutory good time for the Armed Robbery committed on March 7, 1985.

However, there are several significant factors that distinguish the <u>Lynch</u> case from the instant matter. In

---

[7] Although the record of the sentencing hearings was not before the Worcester Superior Court when deciding the Petition for a Writ of Habeas Corpus and is thus not properly before the court on appeal, counsel submits that the record would clearly show that Judge Zobel imposed the sentence he did knowing that DuPont would not receive statutory good time.

14

Lynch, the petitioner's parole had been unconstitutionally revoked, that unconstitutionality had been decided in a prior proceeding, and the petitioner had been incarcerated solely pursuant to the invalid revocation for more than a year prior to his escape; at the time of escape, the sentence being served was voidable not void; although held pursuant to unconstitutional parole revocation, Lynch could be (and was) convicted of escape and punished; his right in the circumstances of imprisonment as a result of improper revocation was to test the validity of his confinement through normal legal channels not by escape; and in these "special circumstances" the court concluded that the forfeiture provisions of c. 127, § 83 did not apply because the forfeiture statute "could not have been intended to deal with this situation." Id. at 758-761. The court stressed that "(A)ny implication that a prisoner who ought to be paroled, but is not, may depart from his place of confinement and subsequently may assert the invalidity of his confinement as a defense to the crime of escape (see G.L. c. 266, § 16) must be rejected." Id at 760. (In other words, even invalidity of confinement will not result in a prisoner being treated as if he were not confined).

See DuPont ⌄

MASS, PAROLE BOARD, NORFOLK Unlike Lynch, there was no prior judicial decision

No. 84-2061 → invalidating DuPont's parole, and therefore DuPont was not

C Dolan, J. 2/28/85 PAGE 12) "THE RECORD IS SILENT, CRAT best AMbiguous

As To whether DuPont's Ability To confront AdverSe wITNesses

AT that hearing WAS improperly Restricted. DuPont in his

AFFIDAVIT claims that his Right To confrontation was

denied... this issue would be best Resolved IN A FuTuRe

evidentiary hearing".

being improperly held due to an invalid parole revocation at the time of the crime at issue. At the time of DuPont's new crimes, on March 7, 1985, there was no doubt that DuPont was serving the 1971 Worcester Armed Robbery sentence; when he was sentenced in August of 1986 to thirty to forty years on the 1985 Armed Robbery, there was still no doubt that on March 7, 1985 he was serving the 1971 Armed Robbery sentence. Only in 1987, after DuPont was granted a new trial on the 1971 conviction, did there arise any shadow of a doubt as to whether he was serving a sentence on March 7, 1985.

[handwritten: VACATED AS UNCONSTITUTIONAL]

[handwritten left margin: Loss of 3 years unnecessarily served on unconstitutional sentence twice the special circumstances for Lynch to apply]

The circumstances surrounding DuPont's 1987 revised sentence for the 1971 conviction and the resulting retroactive discharge from that sentence at a date just prior to DuPont's 1985 crimes are not equivalent to the "special circumstances" of Lynch's case. There is, therefore, no reason to conclude that Lynch's unique facts mandate a particular determination of the issues here.

IV. THE SUPERIOR COURT PROPERLY DISMISSED THE PETITION FOR WRIT OF HABEAS CORPUS AS TO THE MASSACHUSETTS PAROLE BOARD BECAUSE THE ISSUE AS TO WHETHER THE PAROLE VIOLATION WARRANT WAS PROPERLY LODGED WAS NOT GERMANE TO THE RESOLUTION OF THE UNDERLYING CLAIM THAT DUPONT WAS ENTITLED TO IMMEDIATE RELEASE FROM CUSTODY.

DuPont brought this claim as a petition for writ of habeas corpus in the Superior Court, claiming that he was

16

entitled to immediate release from custody because the Department of Correction owed him a substantial amount of good time credits. The claim brought against the Massachusetts Parole Board, predicated upon the propriety of a parole violation warrant that the agency had lodged against him, had no bearing on the issue of unlawful confinement. Indeed, he did not allege that the Parole Board was unlawfully confining him. The issue involving the Parole Board, therefore, was not properly before the Superior Court since an inmate petitioning for habeas corpus must show that he or she is entitled to immediate release from custody. Stewart, petitioner, 411 Mass. 566, 569 (1992); Hennessey v. Superintendent, Massachusetts Correctional Inst., Framingham, 386 Mass. 848, 851-52 (1982). At all times material, the DuPont has been under the care and custody of the Department of Correction. He could not claim that he was entitled to immediate release from Parole Board custody because he was not under parole supervision. His habeas corpus claim against the Parole Board respondents was misplaced. The dismissal of the habeas corpus petition as to the Parole Board respondents was, therefore, proper as a matter of law.[8]

---

[8] The Parole Board is cognizant of the fact that prior counsel for the Parole Board conceded at the May 2, 2001 motion hearing that the parole violation

17

CONCLUSION

    For all the reasons discussed above, the decision of the Superior Court, denying the Petition for a Writ of Habeas Corpus and granting summary judgment to the Respondents, should be affirmed.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

*David Slade*

David Slade
Sentencing Counsel
Department of Correction
70 Franklin Street
Suite 600
Boston, MA 02110-1300
(617) 727-3300 x 164
BBO #466060

Date: July 22, 2002

*Beatriz Van Meek*

Beatriz Van Meek
General Counsel
Parole Board
27 Wormwood Street
Boston, MA 02210
(617) 727-3271
BBO #565124

*(Handwritten left margin: "IT APPEARS THAT PAROLE VIOLATION WARRANT should have been served earlier, and if it was served EARLIER, THAT sentence is OVER, That goes Away.")*

---

warrant should be withdrawn. (May 2, 2002 Motion Transcript at 29-32). As Justice Donohue noted in his decision, it is within the exclusive jurisdiction of the Parole Board to make that determination (App. Vol. I, p. 12). That issue is presently pending before the Parole Board and should be decided administratively within the next few months.

18