UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Michael Kevin DuPont,
  Petitioner

V.                                No. 04-11431-GAO

David Nolan, et. al.,
  Respondent

UNITED STATES V BOOKER MOTION FOR IMMEDIATE BAIL, PARTIAL SUMMARY JUDGMENT AND LATER EVIDENTIARY HEARING SCHEDULING

Now comes the petitioner, and in relation to six months of unruled on motions, in light of sentence(s) expiration next month, moves Judge O'Toole to decide pending bail and Apprendi based ground summary judgment motions and schedule a later full Habeas Rule 8 evidentiary hearing on other denial of counsel in state pre-trial, plea, post-conviction phases, with interrelated ineffective assistance, fully exhausted grounds.

In support thereof, petitioner renews his "impact analysis" argument noting that on January 12, 2005 the Supreme Court again held that "the statutory maximum for Apprendi purposes

- 1 of 2 -

is the maximum sentence a judge [or other state official] may impose solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant" UNITED STATES V BOOKER, 125 S.Ct ___, 543 U.S. ___ (Stevens majority slip opinion, pp 3, 20 & 8) citing BLAKELY V WASHINGTON, 124 S.Ct 2531, 2537 (2004) reaffirming June 26, 2000 holding in APPRENDI on the State's burden to prove all aggravated punishment facts which are not admitted by a defendant, beyond a reasonable doubt (Booker Stevens opinion page 20), "rather than a lone employee of the state" (Booker page 13) quoting Blakely, supra, 124 S.Ct at 2543, "obviously" "as a matter of simple justice" (Booker majority opinion at page 6).

Because lone State Dept. of Corruption attorney David Slade never had power to add 3,000 days in prison aggravated punishment, the State owes million dollar damages for 8 years unconstitutional confinement and the least this court can do is release petitioner immediately.

January 14, 2005     Respectfully submitted

copy served on Ass Atty     /s/ Michael DuPont
General Susan Reardon     Michael DuPont  Pro Se
cc: File                    P.O. Box 100
                            S. Walpole, MA 02071

w/ attaching its special ou atty General's office also!

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX,SS.                                    SUPERIOR COURT DEPARTMENT
                                                 Nos.85-981 thru 85-987

COMMONWEALTH

V.                                               Hon.Judge Lauriat

MICHAEL KEVIN DuPONT

*************************

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
DEC 24 2004

MOTION FOR JUDGE LAURIAT TO ASSIGN COUNSEL FOLLOWING
JUDGE O'TOOLE'S ASSIGNMENT OF COUNSEL FOR SAME FEDERAL
GROUNDS,FOR RECONSIDERATION OF BAIL, AND FOR GL.c.248 §§ 1,25
IMMEDIATE RULE 30(a) HABEAS CORPUS RELEASE ON THE MERITS

Now comes the unconstitutionally confined Defendant, attaching Federal Judge O'Toole's assignment of counsel orders (for the same grounds as this case),attaching DuPont V. Nolan,04-11431-GAO habeas corpus petition,incorporated herein, attaching indictment (and 6 page Apprendi retroactivity memo), noting 4/3/85 grand jury did not hear, and 12/13/99 plea colloquy did not include, any evidentiary factual basis for GL.c.127,§129 aggravated 3,000 day(over eight year) punishment element, and now moves Judge Lauriat,pursuant to c.211D,§14,SJC Rule 3:07, to make a direct assignment of CPCS counsel for pending Commonwealth V. DuPont 04-P-1487 appeal briefing, to reconsider bail (following n.1/ 12/7/04 erroneous denial) and make findings of fact on bail,while considering immediate release with Mass.Crim.P Rule 30(a) habeas

-1 of 2-

---

n.1/In addition to federal Fifth, Sixth and Fourteenth Amendment violations, BLAKELY V. WASHINGTON, 124 S.Ct. 2531 (June 24,2004)the absence of factual basis or element waiver in plea colloquy becomes even stronger when absence of indictment is considered as violation of Article XII of the Massachusetts Constitution,COMMONWEALTH V. SMITH, 1 Mass 245,246-247(1804);WILDE V. COMMONWEALTH,43 Mass 408,410(1841); LARNED V. COMMONWEALTH,53 Mass 240,242(1847);JONES V. ROBBINS, 74 Mass 329,347-349(1857);COMMONWEALTH V. HARRINGTON,130 Mass 35,36 (1880);WALSH V. COMMONWEALTH,224 Mass 40,41-42(1916);BROWN V. COMMISSIONER,394 Mass 89,90-94(1985)(Walpole "infamous punishment" cannot be imposed without indictment on aggravated punishment element);BIMBO V. AMARAL,Suffolk No.75152(4/29/85 Zobel,J);COMMON-WEALTH V. BARBOSA,421 Mass 547,549(1995)("Article 12 requires that no one may be convicted of a crime punishable by a term in the state prison without first being indicted for that crime by a grand jury").

[handwritten margin notes: "To the extent who can have those issues in that case / JSL" ; "12/31/04 upon review, motion denied. Allegedly presented in that case, overlap w/the issue. JSL" ; "what may be before the (dist court?) that the issue allegedly has before the (dist court) that / 605"]

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                    SUPERIOR COURT
                                                                CIVIL ACTION
                                                                NO. 96-5187-C

MICHAEL KEVIN DUPONT

vs.

CHARLES WYZANSKI, JR. and others[1]

notice sent 8/16/04
C.M.W.
G.S.
J.J.B.
A.E.J.
J & D
(mm)

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The plaintiff, Michael Kevin DuPont ("DuPont"), is a prisoner currently incarcerated at MCI-Cedar Junction in Walpole. In 1993, the Department of Corrections ("DOC")[2] sentenced DuPont to an 18-month term in the Departmental Disciplinary Unit ("DDU") after DuPont committed a serious violation of prison rules.[3] DuPont then filed this suit for declaratory and monetary relief, claiming that his confinement violated various portions of state and federal law. Specifically, DuPont claims that because the DDU is used as a sanction for male inmates only, the DOC's actions violated the Code of Massachusetts Regulations as well as DuPont's liberty interests guaranteed under Massachusetts law and his due process and his equal protection rights guaranteed under the Fourteenth Amendment to the United States Constitution and Articles 1, 10, and 12 of the Massachusetts Declaration of Rights.

On December 23, 1997, this court (Hinkle, J.) allowed a motion by the defendants for

---
[1] David Rentsch, Michael Cohen, Larry Edward DuBois, Michael T. Maloney, James Bender, Ernest Vandergriff, Ronald Duval, David Powers, Peter Allen, Phillip Harrington, Michael Buckley, Glen Gaspar, Marolyn Darling, Allison Hallett, Donna Phillips, David Butters, Douglas Adams, Kenneth Ayala, Edwin Doolin, Duane MacEchern, Kenneth Silva, Ronald Duffesne, George Griggs, Pamela MacEchern, Anthony Silva, Kenneth Mahtesian, Jeffrey Sherwin, and Mary McCrosson.
[2] "DOC" refers to all defendants collectively.
[3] DuPont eventually served 55 months in the DDU.

1

---

summary judgment on all counts. DuPont appealed, and, on March 25, 2002, the Appeals Court affirmed the decision to grant summary judgment on all counts except the equal protection claim. The Appeals Court concluded the evidence in the record was insufficient to determine as a matter of law that the DDU could be applied to male prisoners only. The Appeals Court then vacated judgment on the equal protection count and remanded the case for further proceedings. On March 24, 2004, the defendants filed this renewed motion to dismiss or, alternatively, for summary judgment. For the reasons stated below, the motion is **DENIED**.

Because this court is concerned about the correctness of this decision, as well as its impact on the court's "micromanagement" of prisons and the floodgate potential for suits to be brought by current and former inmates of the DDU claiming a denial of equal protection under the Massachusetts Declaration of Rights, this court exercises its discretion to report its decision to the Appeals Court. See MASS. GEN. LAWS c. 231, §111, para. 2 (2002); Mass. R. Civ. P. 64(a). Precedent in Massachusetts suggests that prison regulations as promulgated by the DOC should not be subject to strict scrutiny but rather should be regarded with deference, lest the courts begin to micromanage the prison system. See Cacicio v. Sec'y of Pub. Safety, 422 Mass. 764, 769-70 (1996); Kenney v. Comm'r of Corr., 393 Mass. 28, 35 (1984). In the interest of judicial economy, this court finds it appropriate to report to the Appeals Court the correctness of this court's decision, as well as the following question:

> Should prison regulations, contested on an "as applied" basis by individual inmates as violating equal protection rights based on a suspect classification such as gender, be considered through the lens of rational basis scrutiny or by the more rigorous strict scrutiny analysis?

**DISCUSSION**

Where parties provide affidavits in connection with a motion to dismiss, the presiding judge may properly, with notice to the parties, treat the motion as one for summary judgment

2

Art. 106 (the Equal Rights Amendment) of the Declaration of Rights, requires the application of strict scrutiny principles. Chou, 433 Mass. at 237 n.6; Attorney Gen. v. Massachusetts Interscholastic Athletic Assoc., Inc., 378 Mass. 342, 354 (1979); Commonwealth v. King, 374 Mass. 5, 21 (1977). A regulation or statute facing a strict scrutiny analysis must be held unconstitutional unless the suspect classification "further[s] a demonstrably compelling interest and limit[s] [its] impact as narrowly as possible consistent with [its] legitimate purpose." King, 374 Mass. at 28.

The DOC, in its motion for summary judgment, implicitly contends that it possesses a compelling interest justifying differing treatment along gender lines.[4] It argues that male inmates are more violent than female inmates and thus require more severe punitive measures so as to "provid[e] a safe and secure correctional environment for other inmates, correctional staff, and the public." See 2nd Aff. of Michael Maloney ("2nd Aff.") at 2; Defs.' Mem. in Supp. of Renewed Mot. for Summ. J. on the Remaining Equal Protection Claim ("Defs.' Mem.") at 4-5. The DOC asserts that it need not establish a DDU for female inmates because they are far less likely than their male counterparts to engage in the violent, predatory, and repetitive behavior that leads to confinement to the DDU. To support its position, the DOC offers a statistical table that lists the number of assaults committed by male and female inmates between 1994 and 2002. See Defs.' Mem., Ex. F-1. In addition, the DOC includes materials describing male violence in prisons, specifically involving homicide, gang violence, and riots.[5] See Defs.' Mem., Ex. F-2 and F-3. Although the DOC admits that the percentage of male and female inmates who commit assaults is relatively equal, it maintains that the lack of a DDU for female inmates is justified because "the assaults between male inmates are far more violent when looked at on a case-by-case basis."[6] 2nd Aff. at 4. DuPont, on the other hand, alleges that the data provided by the DOC must be examined solely by reference to percentages and not by raw numbers. Because any inferences drawn from the evidence at the summary judgment stage must be made so as to benefit the nonmoving party, this court must accept the interpretation of the data as suggested by DuPont. Parent v. Stone & Webster Eng'g Corp., 408 Mass. 108, 112-13 (1990); see Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982), cert. denied, 459 U.S. 970 (1982); Hub Assocs. v. Goode, 357 Mass. 449, 451 (1970). A review of the data by percentages reveals that female inmates, not males, engage in assaults on staff and other inmates to a proportionately greater degree than their counterparts. As a result, the DOC cannot meet the requirements of the lower reasonable relation standard, let alone those of the strict scrutiny test, for there can be no reasonable relation to valid penological interests for the differing treatment where male inmates

---

[4] The DOC contends that this court must grant summary judgment because DuPont cannot show that male and female inmates are similarly situated and therefore has not met the threshold requirement for an equal protection claim. As aforementioned, this court infers from the Appeals Court decisions in this case and in Todd that the Appeals Court has implicitly accepted that male and female inmates are, in fact, similarly situated. See Todd, 54 Mass. App. Ct. at 37-40. The DOC does not specifically address the question of which level of judicial scrutiny would be appropriate in the event that this court proceeds to the equal protection analysis, but merely states that the establishment of a DDU "hardly runs afoul of the Equal Protection Clause, regardless of whether a court applies the heightened strict scrutiny test ordinarily applied to gender-based discrimination [at the federal level] or the lower 'reasonableness' standard more commonly applied in the prison context." Defs.' Mem. at 7. This court must employ the most stringent test, that of strict scrutiny. See, e.g., Chou, 433 Mass. at 237 n.6; King, 374 Mass. at 21. This court infers that the DOC's "compelling interest," never specifically identified as such in the DOC's materials contained in the record, would be best be stated as reported in Michael Maloney's Second Affidavit, quoted in the accompanying text above. In addition, the DOC argues that DuPont's equal protection claim must fail because he has not provided materials discussing discriminatory intent or purpose. This court rejects this contention, as it is undisputed that a DDU exists for male inmates but not for females. Where discrimination occurs based on a suspect classification, such as gender in this case, thus requiring a strict scrutiny analysis, the intent or purpose of the alleged discrimination need not be addressed. See, e.g., Chou, 433 Mass. at 237 n.6; Massachusetts Interscholastic Athletic Assoc., 378 Mass. at 354.

[5] This court finds unpersuasive DuPont's contention that the statistics regarding such incidents are irrelevant to the question of whether male inmates are more violent than female inmates because they do not relate to the purpose behind the creation of the DDU. The existence of the DDU is not at issue here; as aforementioned, the DOC promulgated 103 Mass. Regs. Code, §§ 430.00-430.29 so as to apply to all inmates regardless of gender. The question before this court is solely whether the regulations as applied to DuPont violate his equal protection rights, and the materials provided in Defendants' Ex. F-2 and F-3 are germane to the issue of whether there is a basis for distinguishing between male and female inmates for the purposes of defining the DOC's compelling interest.

[6] The DOC's statistics, while divided into the general categories of "physical assaults without a weapon," "assaults with a weapon," "assaults by food and/or fluid," and "cases of inmate-on-inmate assault," are of little help in assessing the actual degrees of violence involved. For example, physical assaults without a weapon can be but are not, at least in the manner vaguely described by the DOC, necessarily less violent than physical assaults with a weapon.