873 F2d 129 (2nd Cir 1989) writ granted on remand from Supreme Court decision on closing argument undiong limiting instruc- tion, Richardson V Marsh, 481 U.S. 200, 211 (1987); United States V Serano, 870 F2d 1, 9 (1st Cir. 1989); Ryan V Miller, 303 F3d 231, 255 (2nd Cir. 2002); United States V Cornett, 195 F3d 776, 785 (5th Cir. 1999); Gaines V Theiret, 846 F2d 402, 405-407 (7th Cir. 1988); United States V Sauza-Martinez, 217 F3d 754, 760-761 (9th Cir.2000); United States V Torres- Ortega, 184 F3d 1128, 1136 (10th Cir. 1999); Hutchins V Wain- wright, 715 F2d 512, 515-519 (11th Cir. 1983); United States V Hillard, 569 F2d 143, 146 (D.C. Cir. 1977); Commonwealth V Esteves, 429 Mass. 636, 639-641 (1999); Commonwealth V Rosa, 412 Mass. 147, 158 (1992).

The recent December 2004 Supreme Judicial Court decision did not decide the specifi objection question of whether " there has to be a showing of unavailabilty" (6/18/98 TR. page 178) so Commonwealth V Beliard, 443 Mass. 79 (2004) does not stand as a bar to the court now holding a hearing on the following ineffective assistance of appellate counsel issue, Mapes V Tate, 388 F3d 187, 189-193 (6th Cir. 2004) and gran- ting relief based on the Commonwealth's failure to prove the defendant's brother Belius Beliard and other guilty plea wit- ness were unavailabilty, Liacos,THE RIGHT OF CONFRONTATION: ANOTHER LOOK, 34 American Trial Lawyers Journal 153 (1972);

Liacos, HANDBOOK OF MASSACHUSETTS EVIDENCE, §8.4.2 pages 479-480 and §8.7.2 pages 491-496 (7th Edition 1999 with 2005 updated supplement); Commonwealth V Bohanon, 385 Mass. 733, 741 (1982); Barber V Page, 390 U.S. 719 (1968) ( insufficient showing witness was unavailable where witness was in federal prison and state made no effort to produce him at trial); Commonwealth V Lopera, 42 Mass. App Ct 133 (1997) ( Declaration against penal interest also requires showing witness was unavailable at time of trial); Commonwealth V Cook, 12 Mass. App Ct 920 (1981); Commonwealth V Sena, 441 Mass. 822, 832-833 (2004) ( Judge must be satisfied proecution met its burden to prove witness is unavailable before admitting prior statements under any exception to the hearsay rule).

e) APPELLATE ATTORNEY DUNCAN'S INEFFECTIVE ASSISTANCE:

Regardless of twelve errors raised in another state appeal, direct appeal counsel was recently held to be ineffective in Mapes V Tate, 388 F3d 187, 189-193 (6th Cir. 2004) after appellate counsel testified in a federal Habeas Corpus Rule 8 evidentiary hearing ordered in Mapes V Coyle, 171 F3d 408, 427-429(6th Cir. 1999), similar to the defendant's request for appellate attorney David Duncan to testify at a New Trial Motion evidentiary hearing in relation to the following non-stategic errors.

At page 11 of attorney Duncan's primary brief listing Detective Paul Martin his only transcript citation is"TR. 6/18: 179-186". At pages 15-21 of Duncan's primary brief his two

citations to testimony reprinted in appendix pages 48-49,and
49-51 refers to Martin's testimony from 6/18/98 TR. pages 182-
183 and 183-185. Duncan's primary brief did not even mention
trial attorney John Amabile's specific Confrontation Clause ob-
jection that " there has to be a showing of unavailability to
use it that way" (6/18/98 TR. page 178), did not cite well kn-
own decissional law which held that type of onjection fully
preserves appellate rights for subsequent admission of non-
testifying unavailable witness hearsay statements,Commonwealth
V DiBenedetto, 414 Mass. 37, 44 n.10 (1992), did not focus arg-
ument on the Commonwealth's burden to show unavailibility of
the defendant's brother Belius Beliard or cite controlling
decisions on such burden, as set out in ground two(d) argument
supra, and thereby caused prejudice in the Supreme Judicial
Court's decision using a miscarriage of jusytice analysis for
unobjected to Confrontation Clause error in Commonwealth V
Beliard, 443 Mass. 22(2004).

   It is obvious that attorney Duncan was not sufficiently
knowledgable of federal Confrontation Clause law because his
reply brief also failed to cite winning decisions on state
prosecutor's failing to meet their burden of proving Belius
Beliard and other witness with personal knowledge of the gui-
lty plea were unavailable, while he chose a state law excep-
tion to hearsay rule focusing on trial counsel saying " a
showing of unavailability (was needed) to use it that way
(App 44), which is the correct requirement for admitting a

hearsay declaration against penal interests" [ reply brief page 1]. Attorney Duncan also had no strategic reason for refusing to follow the defendant's September 17, 2004 letter directions[ Addendum page 7] to argue trial counsel does not have lawful power or authority to waive a defendant's personal Sixth Amendment Confrontation Clause rights, Clemmons v Delo, 124 F3d 944, 956 (8th Cir. 1996) citing Brookhart v Janis, 384 U.S. 1, 7 (19996). Duncan's lack of legal knowledge is also demonstrated by his reply brief failing to cite Commonwealth V DiBenendetto, 414 Mass 37, 44 n.10 (1992).

As reflected in the September 17, 2004 letter, the defendant rechecked closing arguments [Addendum page 11] and called attorney Duncan as well as mailed him a copy of prejudicial closing argument pages[ see the defendant's New Trial Motion affidavt which attorney Duncan's testimony is expected to corroborate at the evidentiary hearing].

Neither the primary or reply brief argue trial counsel's ineffective assistance as strongly as ground two(c),supra, and  attorney Duncan had no stategic reason for failing to include in his primary and refusinf to follow the defendant's directions to add to his reply brief, the prejudicial closing argument undoing any limiting instructions (6/23/98 TR. page 62) as set in ground two(d), supra, incorporated therein.

Attorney Duncan's primary brief conclusively shows he did not notice the unavailability specific Confrontation Clause objection (6/18/98 TR. page 178), Commonwealth V DiBenedetto, supra, and did not recognize trial attorney Amabile's failure to renew that objection constituted ineffective assistance, when combined with prejudicial focus on such evidence in closing argument which counsel was also ineffective for failing to object to (6/23/98 TR. pages 62, 74-76), Mason V Scully, 16 F3d 38, 40-45 (2nd Cir. 1994); Washington V Hofbauer, 228 F3d 689, 707 (6th Cir. 2000).

Because Duncan refused to fully brief these issues and an imprisoned defendant should not be forced to late file his own proper arguments, after an evidentiary hearing fully develops the record with Duncan's testimony, Mapes V Coyle, 171 F3d 408, 427-429 ( 6th Cir. 1999) attorney Duncan must be found ineffective and a new direct appeal allowed on these combined issues, or a new trial granted, Mason V Hanks, 97 F3d 887, 893-902 (7th Cir. 1996); Clemmons V Delo, 124 F3d 944, 948-956 (8th Cir. 1996); Mapes V Tate, 388 F3d 187, 189-193 (6th Cir 2004).

III.DIRECT APPEAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY
REFUSIING TO BRIEF THE SUBSTANTIVE ISSUE PRESENTED WHICH
CONCERNED INTERRELATED FLAWS IN JURY INSTRUCTIONS TRIAL COU-
NSEL FAILED TO OBJECT TO AND THE OVERBEARING TRIAL JUDGE BE-
LITTLING DEFENSE COUNSEL IN FRONT OF THE JURY AS WELL AS
ERRONEOUSLY INTERRUPTING AND RESTRICTING CLOSING ARGUMENT IN
AREAS OF MIXED FACT AND LAW THEREBY VIOLATING THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND
ARTICLE 12 OF THE MASSACHUSETTS DECLARATION OF RIGHTS

a) FACTS SUPPORTING NEW TRIAL MOTION GROUNG THREE:

The defendant's October 21, 2004 attached letter [Addendum

pages A-13 through A-18] and attorney Duncan's attached Oct-

ober 28, 2004 letter [Addendum page A-1] verify direct appeal

counsel specifically refused to brief this new trial motion

ground three issue, and thereby breached his contract duty

and violated both state and federal constitution s with resp-

ect to the following obviously meritious issues that were

stronger than those briefed by attorney Duncan.

The obvious merit of ground three is contained in Judge

Banks finding " This is about as flagrant a contest between

a Judge and a lawyer as I've experienced in a long, long time"

(6/22/98 TR. page 105),followed by attorney Amabile's correct

motion for a mistrial (6/22/98 TR. page 110) based on defense

counsel's specific objections when he stated " I believe that

I am acting in good faith",

" to provide zealous representation of my client and the co-

urt's conduct is having the clear effect of undercutting my

credibility in front of the jury" (6/22/98 TR. page 105)

-22-

because " the way your Honor has handled me and this case is
you've repeatedly refused my ability to come to the sidebar
to voice objections, youve repeatedly interrupted me right when
I'm attaining some momentum to make a valid point on cross-
examination with key witnesses in the case... many of these
interruptions have been done without objections by the Comm-
onwealth, so the effect has been to communicate to the jury
that there's something improper about the way that I'm hand-
ling the defense of Jack Beliard, and that severely undercuts
my credibility in front of the jury" (6/22/98 TR. pages 107-
108), referring to dozens of times Judge Banks yelled at att-
orney Amabile " come up here" making angry facial features in
front of the jurors (see affidavit of Jack Beliard in support
of motion for a new trial).

Although the prosecutor was always granted her requests
to come to sidebar, Judge Banks angrily yelled "no" or told
defense counsel "not now", denying attorney Amabile's request
to make offers of proof or requests to come sidebar atleast
a dozen times during the last few days of the trial (6/18/98
TR. pages 46,118,149; 6/19/98 TR. pages 44,70,125,132,136,246,
251; 6/22/98 TR. pages 31,102,123,132,138,146,150,176,186,189
253). Bank's chastized Amabile repeatedly, including saying
" you've asked him that fifty times" (6/18/98 TR. page 53)
yelling that Amabile should " sit down" (6/22/98 TR. page 53),
telling jurors and Amabile " that's meaningless" (6/18/98 TR.

-23-

page 46) and conducting a long lecture colloquy in front of
jurors telling Amabile that he doesn't understand and lect-
uring Amabile in a chastizing manner, so "we'll all underst-
and you" (6/18/98 TR. page 47).

   The disagreement  appeared to start in the middle of the
trial when, at sidebar, Judge Banks told Amabile, " I don't
want to continue this conversation. Bring the jury down" (6/
18/98 TR. page 16), then telling Amabile, " look, let me tell
you now. I am becomming exhausted with your inability to fol-
low my directions. Go back to your seat and resume cross- ex-
amination" (6/18/98 TR. page 20). Lecturing attorney Amabile
like he was a child was in response to defense counsel ask-
ing to put prosecutor on the stand because " the (lobby) con-
ference was conducted off the record (so) I think we need to
put the witness", to which Banks replied, "sir, let me tell
you, I don't, okay" (6/18/98 TR. page 20).

   During a very brief jury charge confrence (6/23/98 TR. pages
19-26) attorney Amabile admitted he only filed one request for
A self-defense and manslaughter instruction (page 25) and did
not file Mass.Crim.P.Rule 24(b) written requests for jury in-
structions on the presumption of innocence the Commonwealth's
burden of proof credibility of witness and Amabile's request
to argue that in a circumstantial evidence case the jury must
find that the Commonwealth must prove the defendant's guilt
beyond a reasonable doubt to exclude any other reasonably hy-

pothesis [that someone else committed the crime or any reason-
ably hyphesis] consistant with innocence (page 25). Judge
Banks gave attorney Amabile permission by stating "you can
touch on that first part of it if you want" (page 25) meaning
the burden of proof "issue of circumstantial evidence",**id.**

Judge Banks kept his promise and allowed attorney Amabile
to argue the law by stating **"in each instance with circumstan-
tial evidence**, the inference the Government asks you to draw
from that evidence is equally refuted by many other possible
plausible,**inferences that are incosistant with Jack Beliard's
guilt**. Therefore, **there is noproof beyond a reasonable doubt"**
(6/23/98 TR. page 37), but Judge Banks arbitrarily and capri-
ciously interrupted and stopped Amabile's argument on the pre-
sumption of innocence lasting throughout the case, when Banks
agressively and angrily told Amabile in front of the jury
" counsel, I will take care of the law" (6/23/98 TR. pages
34-35) just before stopping the argument on each case and
each indictment being considered seperately when Banks yelled,
" counsel, I will take care of the law, okay? you argue the
facts in the case... I want to instruct the jury to take the
law from me and me only" (6/23/98 TR. pages 35-36). This was
followed by two mad out bursts from Judge Banks telling att-
orney Amabile, "let me handle that, okay?" during Amabile's
argument concerning " witness demeanor" (6/23/98 TR. page 44)
which Banks repeated by yelling at Amabile again in front of
the jury " what I am trying to tell you is I will instruct
the jury on all that", " you don't argue my instructions, you

-25-

argue the facts of the case" (6/23/98 TR. page 44). Then when attorney Amabile attempted tp argue the jury was "the sole determiners of the credibility of the witness" (6/23/98 TR. page 44) Judge Banks repeated his persistant trial treatment of Amabile as if defense counsel was a child, by Judge Banks angrily telling attorney Amabile to " come to the sidebar", followed by the court lecturing " my patience is very close to exhausted. Argue the facts of the case", " don't you un-derstand what I just said", followed by Banks threat to for-close further argument by ordering Amabile to " argue the facts or sit down" (6/23/98 TR. pages 45-46). Attorney Amabile properly objected to Judge Banks mistreatment of him by say-ing  " this is proper argument, your Honor" (6/223/98 TR. page 46) and Jysge Banks interupted closing aarguments two more times telling Amabile he was running out of time (6/23/98 TR. pages 48-53).

Judge Banks the gave the incorrect jury instruction from **Commonwealth V Kane**, 19, Mass. App. Ct. 129, 139 (1985):

> "The presumption of innocence remains with them during
> the course of the trial <u>unless you at any point det-
> ermine evidence submitted to you has proven guilt</u> be-
> yond a reasonable doubt. <u>If that occurs,that presump-
> tion of innocence disappears like it never existed.</u>
> Ther is a moving force unless proof beyond a reason-
> able doubt causes it to <u>disappear</u>" (6/23/98 TR. pages
> 90-91)

This followed by a disjunctive alternative burden of pro-
of instruction which ended with the phrase, "that is what I
mean by the term reasonable doubt **or** proof beyond a reason-
able doubt" (6/23/98 TR. page 94) which did not explain which
portion of the forgoing instructions it referred to,**id.**

Attorney Amabile did not object to these errors (6/23/98
TR. page 117) and attornet Duncan refused to brief this issue
[Addendum page 1].

During the second day of deliberations, juror's requested
Judge Banks to "please refresh our memories about everything
you told us about doubt and reasonable doubt" (6/24/98 TR.
pages 4-5). Showing his lack of legal knowledge concerning
the **Commonwealth V Kane**,19 Mass. App. Ct. 129, 139 (1984)
decision, attorney Amabile then requested that "you should
also re-instruct them **exactly the way you did before** on the
question of presumption of innocence" (6/24/98 TR. page 5).
Subsequently the jury returned again with another question
seeking reinstruction (6/24/98 TR. pages 10-19) at which
time  Amabile again urged for reinstruction on the presumption
of innocence which had not been requested by jurors (6/24/98
TR. page 16).

Judge Banks then repeated his errouneous instruction that
the " presumption of innocence is a force in the case **unless**
**proof beyond a reasonable doubt causes it to disappear**. If
the Government proves its case beyond a reasonable doubt,
**the presumption of innocence disappears like it never ex-**

isted" (6/24/98 TR. page 30) followed by a conjuctive last
sentence cofusing the proceeding burden of proof paragraph,
by equatin both the explanation of the burden of proof with
doubt, when Judge Banks told the jury "that's what we mean
by proof beyond a reasonable doubt **and** the term reasonable
doubt itself" (6/24/98 TR. page 35), which Amabile also did
not object to (6/24/98 page 41).

b) **THE MERITS OF GROUND THREE:**

Anew trial was granted when the court instructed that the
"presumption of innocence" "then disappears" when "evidence
of guilt is introduced" in **Commonwealth V Kane**, 19 Mass. App.
Ct. 129, 139-140 (1984) because the presumption of inncence
always continues throughout the case right into jury deliber-
ations, **id**, **Mahorney V Wallman**, 917 F2d 469, 471 n.2 (10th Cir.
1990), and a first degree murder motion for a new trial was
allowed by Judge Carol Ball on this issue in **Commonwealth V
Dello**, Suffolk Nos 8803-8809 (6/9/03) filed in attached add-
endum pages 27-30, based on **Commonwealth V Kane**. The repeated
instructional errors (6/23/98 TR. pages 90-91; 6/24/98 TR.
page 30) violated the defendant's due process rights guaran-
teed by the Fourteenth Amendment to the United States Const-
itution and Article 12 of the Massachusetts Declaration of
rights.

During the primary jury instructions Judge Banks also
said:

    "when all is said and done, **if there remains in the mind**

**any reasonable doubt** consisting of any fact or facts the essential element of guil by the defendants with any crime charged, **then the defendant would have to have the benifit of it an acquital. That is what we mean by** the term reasonable dout or **proof beyond a reasonable doubt"** (6/23/98 TR. page 94)

The same instruction was later given in response to a jury question but the word "or" was changed to "and" when Judge Banks told jurors:

"When all is said and done, **if there remains in the minds of you**, this jury, **any reasonable doubt** of the existence of any fact or act which is an essential element of one or more of the crimes charged, **then the defendant would have to have the benefit of it by an acquital. That's what we mean by proof beyond a reasonble doubt and the term reasonable doubt itself"** (6/24/98 TR. page 34)

Neither the Supreme Judicial Court, nor the Superior Court on remand, have ever approved the last sentence disjuctive ("or") or conjuctive ("and") mixing of the meaning of reasonable doubt with proof beyond a reasonable doubt, and the court may take judicial notice of the fact that only one of the two alterative phrases are used in the modified **webster** modal jury instructions, because the combination Judge Banks used was and is extremely confusing. By ending a paragraph defining "reasonable doubt" as meaning proof beyond a reasonable doubt by the court inverted the instruction turning it on its head, which amounts to structural error requiring a new trial, **Sullivan V Louisiana**, 508 U.S. 275, 280-282 (1993) for violating the defendant's fundamental right to a fair jury trial guaranteed by both the Sixth and Fourteenth Amendments to the United States Constitution, **id**, **Dunn V Perrin**,

570 F2d 21, 24-25 (1st Cir. 1978); **Lanigan V Maloney**, 853 F2d
40 (1st Cir. 1988) and Article 12 of the Massachysetts Decl-
aration of rights, **Commonwealth V Wood**, 380 Mass 545, 547-551
(1980); **Commonwealth V Pickles**, 402 Mass 775, 788 (1988).

Similarly both Article 12 of the Massachusetts Declaration
of rights, **Commonwealth V Gilmore**, 399 Mass. 741, 744-746
(1987) and the Sixth and Fourteenth Amendments to the United
States Constitution were violated by Judge Banks' interrupting
defense counsel's closing argument and odering counsel to
stop arguing the law four times (6/23/98 TR. pages 34, 35-36
44), **United States V DeLoach**, 504 F2d 185, 187-193 (D.C. Cir.
1974); **Conde V Henry**,198 F3d 734, 739-742 (9th Cir 1999);
**Herring V New York**, 422 U.S. 853 (1975); when such argument
was proper, **Commonwealth V Geagan**, 339 Mass. 487, 518 (1959);
**Commonwealth V Hogan**, 426 Mass $24, 432 (1998).

Unlike the non-prejudicial  finding where "defense counsel
was allowed to continue with a fairly comprehensive discussion
of reasonable doubt" in **Commonwealth V Hogan**, 426 Mass. 424,
432-433 (1998) in this case cutting off closing argumentfol-
owed over two dozen refusals' to allow defense attorney Ama-
bile to go to sidebar and many other prejudicial commoents
Judge Banks angrliy made snarling and yelling at defens cou-
nsel in front of the jury (6/18/98 TR. pages 46,47,53,118,149;
6/19/98 TR. pages 44,70,125,132,136,245,251; 6/22/98 TR. pages
31,53,102,123,132,138,146,150,176,186,189,253) while all pro-
secution requests for sidebar were allowed and Judge Banks

beliitled and lectured Amabile repeatedly at sidebar (6/18/98
TR. pages 15-20; 6/22/98 TR. pages 103-110; 6/23/98 TR. pages
45-46) while making the presumptively correct finding that
" this about as flagrant a contwst between a Judge and a law-
yer as I've experienced in a long, long time" (6/22/98 TR.
page 105).

The angry facial features of Judge Banks and his mistreat-
ment  of trial counsel violated the defendant's right to a fun-
damentally fair trial guaranteed by the Fourteenth Amendment
to the United States Constitution,**Porcaro V United States**,784
F2d 38, 41-42 (1st Cir. 1986); **Oses V Commonwealth  of Mass-
achusetts**, 775 F.Supp 443, 455-462 n.24 D.Mass 1991), grant
of writ affirmed, 961 F2d 985 (1st Cir. 1992) and Article 12
of the Massachusetts Declaration of Rights.

## c) FAILURE TO REQUEST, OR OBJECT TO, JURY INSTRUCTIONS:

With respect to attorney Amabile's failure to file a writted
Mass.Crim.P.Rule 24(b) request for correct jury instructions
and failure to object to the erroneous, prejudicial and con-
fusing presumption of innocence and reasonable doubt equated
as meaning proof beyond a reasonable doubt instructions such
non-strategic errors show a startling ignorance of important
nuances and subtleties of the law; and where, as here, jurors
came back with repeated questions during several days  of del-
iberations this court may grant a new trial based on the ob-
vious ineffective assistance of trial counsel,**Corsa V Anderson**,
443 F. Supp 176, 178 (MD Penn 1976); **Gray V Lynn**, 6 F3d 263,
269-270 (5th Cir. 1993); **Oyola V Boles**, 947 F2d 928, 930-935
(11th Cir. 1991); **Kubat V Theiret**, 867 F2d 351, 371 (7th Cir.

1989); **Commonwealth v Peloquin**, 52 Mass. App. Ct. 480 (2001).

d) <u>INEFFECTIVE ASSISTANCE OF DIRECT APPEAL COUNSEL:</u>

Unlike the unobjected to issues briefed by direct appeal attorney David Duncan, trial attorney John Amabile specifically objected to trial Judge's misconduct and sought a mistrial (6/22/98 TR. pages 106-108, 110) then again specifically objected to similar misconduct when Judge Banks kept interrupting the defense closing argument (6/23/98 TR. page46). The forgoing issues set out in ground three (a)(b)(c) were obvious from the transcript, **Gray V Greer**, 800 F2d 644,646-647 (7th Cir. 1986) and any competent appellate specialist would have seen the connection between subtle flaws in jury insrtuctions and Judge Banks restricting defense counsel from arguing those areas of law,**id.**

Although an evidentiary hearing should be held to hear attorney Duncan's explanations, **Mapes V Coyle**, 171 F3d 408, 427-429 (6th Cir. 1999), the court can also recognize Duncan's refusal (Addendum pagea-1) to file supplemental briefing Jack Beliard specifically requested (Addendum pages A-13 through A-18), and summarily grant a new trial, based on ineffective assistance of direct appeal counsel, **Mapes V Tate**, 388 F3d 187, 189-193 (6th Cir.2004); **Roe V Delo**, 160 F3d 416, 418-420 (8th Cir. 1988); **Lucas V O'Dea**, 179 F3d 408, 416-420 (6th Cir. 1999).

**IV.OTHER ATTORNEY ERRORS INCLUDINGTHE FAILURE TO PREPARE THE DEFENDANT, FAILURE TO SUMMONS TRIAL DEFENSE WITNESSES, AND FAILURE TO HAVE THE DEFENDANT AND UNCALLED TRIAL WITNESS TESTIFY AT THE FIRST NEW TRIAL MOTION HEARING, VIOLATED THE DEFENDANT"S RIGHT TO THE EFFECTIVE ASSISTNCE OF TRIAL COUNSEL, PRE-DIRECT APPEAL MOTION HEARING COUNSEL AND THE RIGHT TO TESTIFY GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 12 OF THE MASSACHUSETTS DECLARATION OF RIGHTS**

a) **FAILURE TO PREPARE THE ACTUAL INNOCENT DEFENDANT TO TESTIFY:**

Although Commitee for Public Counsel Services standards for trial counsel do not require such preperation as a cost-saving policy to limit billable hours, any competent lawyer has a duty to carefully and meticulously prepare to a criminal defendant to testify, **United States V Frappier**, 615 F. Supp 51, 53 (D.Mass. 1986); Flanagan, **TRIAL PRACTICE**, Mass. Practice series volume 43, §125 pages 114-116 (1993 Edition with 2004 supplement); **Fisher V Gibson**, 282 F3d 1283, 1301 (10th Cir. 2002).

The affidavit of Jack Beliard not only verifies trial attorney John Amabile did not sit down with him to go over a long list of direct examination questions, or roleplay a prosecutor doing mock cross-examination of the defendant, but Amabile als did not tell Jack Beliard that only a criminal defendant has the exclusive right to decide whether or not to testify, as required by C.P.C.S trial counsel Performance Standard chapter IV Rule 1.3(f). Chapter VI trial counsel Rules 6.1 and 6.7 concerning pre-trial preperation, and presentation, of witness do not include anything about preparing a client to testify, or notifying him of such right at trial, **id.**

When attorney Amabile decided not to put the defendant on the witness stand, Amabile had not observed the defendant's reactions to any preparatory questions or mock cross-examination; hence, defense counsel was not in a position to decide whether or not the defendant should testify. Those combined non-strategic failures to prepare the defendant to testify or to make a knowing, intelligent and voluntary decision to waive his Fifth, Sixth Fourteenth Amendment and Article 12 right to testify, require this court to granta new trial after hearing  the defendant testify to defense facts set out in his affidavit, filed herewith and incorporated herein, as well as hearing attorney Amabile's testimony at the evidentiary hearing, **Commonwealth V Freeman**, 29 Mass. App. Ct 635, 640-643 (1990); **Gallego V United States**, 174 F3d 1196,1198-1199 (11th Cir. 1999); **State V Hampton**, 818 S₀2d 720, 729 (2002); **Campos V United States**, 930 F.Supp. 787, 792 (ED. N.Y. 1994);  **United States V Butts**, 630 F.Supp. 1145 (D.ME. 1986); **Commonwealth V Licata**, 412 Mass. 654, 661-662 (1992).

Attorney David Duncan had the October 14, 1999 affidavit of Jack Beliard and Duncan knew attorney Amabile never prepared the defendant to testify, but Duncan concealed trial counsel's ineffective assistance by omitting this meritorious issue from first new trial motion proceedings. Attorney Duncan knew, that his client was actually inncent and, therefore, should have testified at trial.

Because Massachusetts reconizes the right to effective assistance of post-conviction counsel during new trial motion proceedings, **Breese V Commonwealth**, 415 Mass 249, 251-252 n.4 (1993), either the Superior Court, or a later Federal Habeas Corpus reviewing court, **must** hear attorney Duncan's testimony explaining his failure to include this issue in his Rule 30 motion, during the necessary evidentiary hearing on this issue **Mapes V Coyle**, 171 F3d 408, 427-429 (6th Cir. 1999) grant of writ affirmed, **Mapes V Tate**, 388 F3d 187, 189-193 (6th Cir. 2004).

## b) FAILURE TO PREPARE AND PRESENT DEFENSE WITNESS:

Ground one(e) is incorporated herein by refrence. "An att-orney's peformance is deficient when he or she fails to con-duct any investigation into exculpatory evidence and has not providedany explination for not doing so", **Stevens V Deleware Correctional Center**, 152 F.Supp.2d 561, 576 (D. Del 2001) and "ineffectiveness is generally clear in the context of a complete failure to investigate because counsel can hardly be said to have made a strategic choice against persuing a certain line of investigation when he has not yet obtained the facts on which such a decision can be made", **United States V Gray**, 878 F2d 702, 711-712 (3rd Cir. 1989); **Kimmelman V Morrison**, 477 U.S. 365, 385-386 (1986).

"An attorney who fails to interview a readily available witness whose non-cumultave testimony may potentially aid the defense should not be allowed automatically to defend his om-ission simply by raising the shield of trial strategy and tactics", **Crisp V Duckworth**,743 F2d 580,584 (7th Cir. 1984) because "counsel's anticipation of what a potential witness would say does not excuse the failure to find out", **United States V Moore**, 554 F2d 1086, 1093 (D.C. Cir. 1976). Further more, defense "counsel cannot asses credibility and demeanor of a prospective witness without looking him in the eye and hearing him tell his story", **US EX REL Hampton V Leibach**, 347 F3d 219, 252 (7th Cir. 2003) quoting, **Lord V Wood**, 184 F3d 1083, 1095 (9th Cir. 1999).

The attached affidavit of Manual Dmas shows he was a mat-
erial witness capable of contradicting the prosecutors main
witnesses, and invstigator Joe Murphy's July 11, 1997 report
shows Mr. Damas and the defendant's mother were important
witnesses who should have been called (Addendum pages 31-33).
New assigned CPCS counsel will ontain further affidavits from
Mr. Damas, the defendant's mother and his brother Annibal(A/K/
A Bobby) Beliard consistant with investigator Murphy's report
(Addendum page 33). Attorney John Amabile's failure to person-
ally interview, prepare to testify, summons and present the
testimony of these witnesses requires an evidentiary hearing,
detailed Rule30(b) findings, and new trial, Moran V Vose, 816
F2d 35, 37 (1st Cir. 1987); Noble V Kelly, 89 F.Supp.2d 443,
463 (S.D. N.Y. 2000);Pavel V Hollins, 261 F3d 210,219-229
(2nd Cir. 2001); Sanders V Ratelle, 878 F2d 702, 716 (3rd Cir.
1989); Griffin V Warden, 970 F2d 1355, 1358 (4th Cir. 1992);
Nealy V Cabana, 764 F2d 1173, 1176-1179 (5th Cir. 1985); Bry-
ant V Scott, 28 F3d 1411, 1418-1419 (5th Cir. 1994); Workman
V Tate, 957 F2d 1339, 1345 (6th Cir. 1992); US EX REL Cosey
V Wolf, 727 F2d 656, 657-660 (7th Cir. 1984); Sullivan V Fair-
man, 819 F2d 1382, 1386-1390 (7th Cir. 1987); Montgomery V
Peterson, 846 F2d 407, 412-414 (7th Cir. 1988); Harris V
Reed, 894 F2d 871, 876-879 (7th Cir. 1990); Washington V Smith,
219 F3d 620,626-633 (7th Cir. 2000); Davis V Lambert,388 F3d
1052, 1060-1067 (7th Cir. 2004); Chambers VArmontrout, 907
F2d 825, 828-832 (8th Cir. 1990); Brown V Myers, 137 F3d 1154,

1157 (9th Cir 1998); **United States V Cook**, 45 F3d 1350, 1353-
1356 (10th Cir. 1995); **Code V Montgomery**, 799 F2d 1481 (11th
Cir. 1986).

Similraly the expected affidavit of Bleius Beliard should
show that he never would have testified for the prosecution
against his own brother, that attorney Amabile did not attempt
to locate, interview prepare and summons Belius Beliard, but
had counsel done so and the court threatened to admit the ev-
idence due to any refusal to testify for tha Commonwealth
supporting a finding of unavailibilty, Belius Beliard could
have testified that his plea was the equivolent of nolo con-
tendre, that he didn't accept responsibility for specifically
firing any .25 calibre firearm, did not posses the .25 calibre
firearm, and chose not to fight that individual charge solely
to obtain a reduced sentense for armed home invasion and the
firearms offense. Both Belius Beliard and attorney John Amabile
**must** testify to fully develop the record at an evidentiary
hearing, **Commonwealth V De Lacruz**, 61 Mass. App. Ct. 445, 452
(2004); **Commonwealth V Aviles**, 40 Mass. App. Ct. 440, 444- 447
(1996); **Commonwealth V Licanta**, 412 Mass 654, 662 (1992);
**Epsom V Hail**, 330 F3d 49 (1st Cir. 2003). Failure to order his
guilty plea transcript shows similar incompetence.

### c) ATTORNEY DUNCAN WAS ALSO INEFFECTIVE:

As set out in defendant Jack Beliard's affidavit, he gave
attorney David Duncan the affidavit of Manuel Davis (Addendum
pages 31-32), attorney Duncan had investigator Murphy's report
(Addendum page 33) and the ground two record alerted attorney
Duncan to the necessity of ordering Belius Beliard's guilty

plea transcript,[ where ineffective attorney Amabile did not obtain the guilty plea transcript prior to, or during, the defendant's trial. Being too lazy to obtain affidavits from Annibal Belird or the defendant's mother and refusing to use Manuel Damas' affidavit, or obtain and file Belius Beliard's affidavit in support of the new trial motion filed by attorney Duncan, strongly supports this court requiring attorney Duncan to testify at an evidentiary hearing, **Mapes V Coyle**, 171F3d 408, 427-429 (6th Cir. 1999) writ granted, **Mapes V Tate**, 388 F3d 187, 189-193 (6th Cir. 2004), followed by detailed specific Rule 30(b) findings in support of this court granting a new trial based on the combined ineffective assistance of trial and post-conviction counsel violating the defendants' rights guaranteed by the Sixth and Fourteenth Amendments to the Unted States Constitution and Article 12 of the Massachusetts Declaration of rights

## CONCLUSION

This Court (SJC) is requested to remand this to the Superior Court and to assign CPCS counsel (averring under pain and penalty of perjury only $80.00 in prison personal account,$180.00 in prison savings account and no real property or outside bank accounts,liquid assets to retain counsel,and family still owing Atty Duncan), allow post-trial discovery,grant an evidentiary hearing to fully develop the record and after making extensive detailed factual findings,Rule 30(b), allow this new trial motion,and grant Rule 30(c)(8) bail pending any appeal thereof,id.

January 11,2005

RESPECTFULLY SUBMITTED BY,

Jack Beliard pro se
PO Box 100
S.Walpole,MA.02071

Original:SJC filing
cc.Superior Court
copy served on Assistant
District Attorney Paul Linn,
One Bulfinch Place,
Boston,MA.02114-2997

cc.CPCS Appeals Unit David Nathanson for assignment
cc.Atty John Amabile(w/affidavit request)
cc.Atty David Duncan (w/Affidavit request)

FILED
IN CLERKS OFFICE
2005 FEB -7 P 2: 36
U.S. DISTRICT
DISTRICT OF MASS.