DuPontProbationDecision.doc

COMMONWEALTH v. MICHAEL DUPONT August 7, 2003
MASSACHUSETTS APPEALS COURT 128 DECISIONS

Docket No.: 02-P-345
Date: August 7, 2003
Panel:
CaseName:                          COMMONWEALTH  v.  MICHAEL  DUPONT

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

   The defendant, Michael Dupont, appeals from a conviction in the District Court
for threatening to commit a crime. G.L. c. 275, § 2. At the time the alleged threat was
made (to a correction officer), the defendant was being held at MCI, Cedar Junction,
as a pretrial detainee after being granted a new trial. The defendant raises numerous
issues within the following categories: (1) ineffective assistance of counsel; (2)
improper limitations on the defense; and (3) errors in the jury instructions. The
defendant also claims that the judge imposed an unconstitutional probationary term.
We affirm.

   1. Factual background. A jury could have found the following facts. During the
evening of November 15, 1999, Lieutenant Wayne Bennett and Officer John Kiernan
of the Department of Correction went to the defendant's cell in the hospital area to
give him legal materials for his upcoming case and to check the material he already
had. Inmates were allowed only one cubic foot of legal or reading material at a time.

   Through the locked cell door, Lieutenant Bennett asked the defendant if he wanted
to receive his legal materials. The defendant said he had eighteen inches of paper and
that he wanted to mail some materials out. Lieutenant Bennett said he would take the
mail out first and then give the defendant his legal materials. Lieutenant Bennett
asked the defendant several times to "cuff up," i.e., to place his hands behind his back
to be handcuffed before being taken out of the cell, so that he could not assault
anyone. The defendant refused. Lieutenant Bennett was unaware of any medical
reason the defendant should not be handcuffed from behind.

   The defendant stood next to the cell door and screamed at Lieutenant Bennett that
"when he got out, when the judge let him out tomorrow, he was going to, he knows
where [Lieutenant Bennett] live[s], he was going to come to [his] house and put a .38
to the back of [his] head, blow [his] head off and kill [his] family."

   Correction Officer John Kiernan heard the defendant threaten "to take a milk crate
and shove it up [Lieutenant Bennett's] ass" and threaten to go to Lieutenant Bennett's
house, put a gun to his head, and kill him and his family. Sergeant William Slavick,
sitting at the officer's desk about 100 feet from the defendant's cell, heard the
defendant yell at Lieutenant Bennett and Officer Kiernan.

   Lieutenant Bennett believed that he and his family had been threatened. Lieutenant

Bennett told the shift commander what had happened and that he could not carry out his job.

Sergeant William Slavick, who was working at the officer's desk, heard the defendant yelling from 100 feet away. Slavick testified on cross-examination that inmates yell at the correction officers relatively often.

The defense theory was duress. The defendant testified that he had been at MCI, Cedar Junction, since 1985 and had won a motion for new trial. The defendant explained that he had become angry and "snapped" when Lieutenant Bennett spoke to him and that he was merely trying to stop Lieutenant Bennett from taking his legal materials or hurting him. The defendant testified that his cell was "stripped"--it had holes instead of windows and a slot for a food tray. From September, 1997, to September, 1998, he was injured by correction officers thirty to forty times. He was sprayed with tear gas, his head was smashed into walls, he was grabbed inappropriately, and he had scars from restraints. The defendant believed that he was treated in this manner because he was doing legal work. At one point, his left shoulder was dislocated when guards handcuffed him behind his back, and an orthopedic surgeon eventually advised that the defendant not be handcuffed in this manner.

The defendant admitted that he told Lieutenant Bennett that if he had a gun he would "blow [his] ... f-word head off." The defendant explained that he had not threatened Lieutenant Bennett's family, that it was just "a personal beef." When Lieutenant Bennett came to his cell that night, the defendant thought of the "pain from before, all these prior uses of force," and he started "barking, yelling and trying to back him off, let him know this was serious. If you come in this cell, you've got a serious problem. It's going to escalate above the normal situation." The defendant testified that it was highly likely that if he had had a .38 (revolver) he would have killed Lieutenant Bennett, as he had been in isolation for two and one-half months. Lieutenant Bennett had not touched the defendant that night, and the defendant thought it likely Lieutenant Bennett had never touched him or threatened him.

2. Ineffective assistance of counsel. The defendant did not file a motion for new trial, which is the preferred method of raising a claim of ineffective assistance of counsel. We may review a claim of ineffective assistance of counsel on direct appeal when "the factual basis of the claim appears indisputably on the trial record." Commonwealth v. McCormick, 48 Mass.App.Ct. 106, 108 (1999), quoting from Commonwealth v. Adamides, 37 Mass.App.Ct. 339, 344 (1994).

a. Failure to move for a required finding of not guilty. The defendant claims that trial counsel's failure to move for a required finding of not guilty constituted ineffective assistance of counsel, because in light of the defendant's incarceration, the defendant did not have the ability to carry out the threat, and a reasonable person would not have been apprehensive in the circumstances. [1] [2] Ineffective assistance of counsel claims are governed by the standard set froth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), and "[n]ormally, the defendant must show that 'better work might have accomplished something material for the defense.' ' Commonwealth v. Reid, 400 Mass. 534, 537 (1987), quoting from Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). In this case, there was no ineffective assistance of counsel with regard to the failure to move for a required finding,

because the motion would have been denied. See Commonwealth v. Reid, supra at 540-541. We review the denial of such a motion using the familiar standard of Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), and consider "whether the Commonwealth produced enough evidence, taken in the light most favorable to the Commonwealth, to satisfy any rational trier of fact beyond a reasonable doubt that each element of the crime was present ." Commonwealth v. Hilton, 398 Mass. 63, 64 (1986). See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979).

The crime at issue is threatening to commit the crime of murder. "The elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." Commonwealth v. Robicheau, 421 Mass. 176, 183 (1995). See Commonwealth v. Milo M., 433 Mass. 149, 151-152 (2001).

Whether the communication should justify apprehension on the part of the victim is measured by an objective standard of the ordinary person. See Commonwealth v. DeVincent, 358 Mass. 592, 595 (1971); Commonwealth v. Sholley, 48 Mass.App.Ct. 495, 497 ("the decisional law requires that the threat be made in circumstances that would reasonably justify apprehension on the part of an ordinary person"), S.C., 432 Mass. 721 (2000).

Here, a jury could have found that, when two correction officers arrived at the defendant's cell desiring to exchange legal materials with the defendant, the defendant verbally tried to stop Lieutenant Bennett and the other officer from entering his cell and exchanging the materials. The defendant stated to Lieutenant Bennett that he was being released tomorrow and that he knew where Lieutenant Bennett lived and would kill him and his family. (Tr. I/75). Lieutenant Bennett told the shift commander that he could not continue his work.

Although it might appear that because of his incarceration, the defendant lacked the requisite capability to carry out the threat, "the absence of immediate ability, physically and personally, to do bodily harm, [does not] preclude[ ] a conviction for threats." Commonwealth v. Ditsch, 19 Mass.App.Ct. 1005, 1005 (1985). See Commonwealth v. Milo M., 433 Mass. at 156 (even if there is no immediate ability to carry out a threat, this does not mean that the threat can not be carried out at a later time); Commonwealth v. Strahan, 39 Mass.App.Ct. 928, 930 (1995) (whether defendant might not ultimately carry out threat is not relevant to sufficiency of proof that a threat was actually made); Commonwealth v. Sholley, 48 Mass.App.Ct. at 499 (presence of individual capable of intervening at the time defendant addressed victim did not render otherwise threatening statement nonthreatening). Contrast Robinson v. Bradley, 300 F.Supp. 665, 668 (D.Mass.1969) (in law, threat requires more than mere intention; it requires ability in circumstances to carry out threat).

In Commonwealth v. Ditsch, supra, the defendant was convicted for writing letters containing threats to his mother-in-law while he was incarcerated. We concluded there that the letters from the defendant prisoner gave rise to a justifiable apprehension on the part of his mother-in-law, and therefore she "could reasonably have believed that the defendant actually had the ability to cause her bodily harm, either personally after his release or through the employment of an agent." "It is of no consequence that the threat pertained to some uncertain time in the future."

Commonwealth v. Sholley, 432 Mass. at 726 n. 5.

Here, evidence that the defendant yelled at Lieutenant Bennett that "when he got out, when the judge let him out tomorrow, he was going to, he knows where [he] live[s], he was going to come to [his] house and put a .38 to the back of [his] head, blow [his] head off and kill [his] family" could permit a rational juror "to draw the reasonable inference that ... violence, either presently or in the future, would follow." Commonwealth v. Elliffe, 47 Mass.App.Ct. 580, 583 (1999) (motion for required finding on threats charge properly denied where defendant was "very very angry" and repeatedly shouted "drop the charges"). Commonwealth v. Haggins, 38 Mass.App.Ct. 976, 977 (1995) (motion for required finding on threats count would properly have been denied where evidence was sufficient to prove threats directed toward arresting officer).

b. Failure to pursue all of the defendant's pro se motions and trial strategies. The defendant claims that defense counsel was ineffective because he did not call certain defense witnesses and did not submit the defendant's medical records in evidence. As we have noted, the defendant has not filed a motion for new trial in support of this claim. The defendant made no other kind of proffer indicating which witnesses he believes trial counsel should have called, how those witnesses would have testified, and how such testimony could have affected the outcome of the trial. In these circumstances, the defendant's claim of ineffective assistance of counsel must fail.

Furthermore, "[a]s a general proposition, ineffective assistance is not established simply by showing that trial counsel failed to offer certain evidence." Commonwealth v. Medina, 20 Mass.App.Ct. 258, 261 (1985). Proffered evidence regarding witnesses who could support the defendant's version of the incident pales in light of the defendant's own testimony that he told Lieutenant Bennett he would blow his "f-word head off." Finally, any evidence of prior mistreatment could only have been cumulative, as the jury had heard testimony about the conditions under which the defendant was being held and about the defendant's alleged prior systematic mistreatment by correction officers.

As to the defendant's medical history, admission of his medical records would not have accomplished anything material for the defense. According to the records the defendant offers, the restriction on cuffing him behind his back expired on June 22, 1999, months before the incident with Lieutenant Bennett. Even if defense counsel should have introduced medical records, there was no error because "there was ... other evidence of the defendant's medical condition to guide the jury's consideration of his [duress] defense." Commonwealth v. Lora, 43 Mass.App.Ct. 136, 143 (1997).

It is improbable that a different result might have been reached had the evidence been considered by the jury. The defendant has not demonstrated that he was deprived of "an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. at 96.

c. Failure to move to dismiss the complaint. The defendant claims that defense counsel's failure to prepare a timely written motion to dismiss the complaint on the ground that it was not formally sworn amounted to ineffective assistance of counsel. Defense counsel moved orally to dismiss the complaint and indicated that he would file a written motion. No written motion was filed. The record shows that the complaint was sworn on November 16, 1999. Filing a motion to dismiss the

complaint would have been futile. Commonwealth v. Rumkin, 55 Mass.App.Ct. 635, 637-638 (2002).

d. Defense counsel's understanding of the elements of duress. The defendant claims that his trial counsel did not understand the defense of duress. In support of this claim, the defendant points to trial counsel's request that the judge review the elements of duress before counsel began his closing argument.

A review of defense counsel's opening statement, cross-examination of the Commonwealth's witnesses, direct examination of the defendant, and closing argument shows that he was fully prepared and put the defense of duress squarely before the jury throughout the trial. More was not required.

Defense counsel marshaled the facts to show that a pattern of prolonged and recurrent mistreatment by correction officers conditioned the defendant to react with fear. Contrary to the defendant's contention, defense counsel was familiar with the defendant's claim of alleged past abuse inflicted by correction officers. Trial counsel presented "a vigorous and realistic defense based on the available facts." Commonwealth v. Allen, 430 Mass. 252, 257 (1999) (no ineffective assistance of counsel in not pursuing defense of duress).

e. Defense counsel's attempt to obtain a humane practice instruction. The defendant faults defense counsel for not succeeding in obtaining a humane practice jury instruction. The claim is without merit. Defense counsel urged the judge to instruct the jury in accordance with the humane practice rule, raised the issue again at the charge conference, and objected when the judge did not give the instruction. The defendant does not suggest what more defense counsel could have done.

Furthermore, as we discuss below, the defendant was not entitled to the instruction. Any further effort on the part of defense counsel "should have, and therefore very probably would have, failed." Commonwealth v. Filippidakis, 29 Mass.App.Ct. 679, 688 (1991). See Commonwealth v. Vieux, 41 Mass.App.Ct. 526, 527 (1996) (failure to pursue a futile tactic does not amount to ineffective assistance of counsel).

3. Limitations on the defense. a. Failure to act on request for summonses. The defendant moved, pro se, for summonses to issue for certain witnesses. The defendant was represented by counsel, and therefore the judge declined to act on the defendant's motions, but the judge stated that counsel for the defendant was free to subpoena or summons whomever he wished. The judge did not err. There is no right to "hybrid representation." Commonwealth v. Molino, 411 Mass. 149, 152-153 (1991). "The defendant can either proceed pro se, or he can accept counsel; in the former situation, he waives his right to counsel, and, in the latter, he must submit to full participation by counsel." Id. at 153.

b. Limitation on evidence of past injuries. Contrary to the defendant's claim, the judge did not improperly limit the defendant's ability to present his defense of duress. The defendant was permitted to testify extensively about his experiences with the prison officials and their alleged mistreatment of him. The judge did, however, limit testimony concerning "collateral litigation." There was no error. Commonwealth v. Durning, 406 Mass. 485, 495 (1990) (judge has discretion to limit cumulative information).

c. Reference to the length of the defendant's incarceration. A single reference during the direct examination of Lieutenant Bennett about the length of time the defendant had been in prison did not unfairly prejudice the defendant. First, the jury were, by necessity, well aware that the defendant was incarcerated. Second, the judge had instructed the jury at the beginning of the trial and again in the final charge that the mere fact of the defendant's incarceration should not affect their decision and was not evidence of guilt. Third, the defendant himself referred to his time at MCI, Cedar Junction, as lengthy. (T.II/106). See Commonwealth v. Ford, 18 Mass.App.Ct. 556, 560 (1984). Finally, there is no support for the defendant's claim that he was forced to take the stand as a result of the judge's failure to sustain the objection to the remark. Defense counsel had promised in his opening that the defendant would take the stand.

4. The jury instructions. a. Threatening to commit a crime. The defendant claims that because the criminal complaint specified Wayne Bennett as the victim of the alleged crime, the defense was "ambushed" when the judge referred to Bennett's family in the instructions on threatening to commit a crime. The defendant objected to the instruction.

The complaint charged the defendant with "threaten[ing] to commit a crime against the person or property of another, to wit: [m]urder." Although Lieutenant Bennett was listed as the victim in the application for the complaint, the complaint did not limit the target of the threat to Lieutenant Bennett. Furthermore, the application for the complaint specifically referred to the attached incident report, which included a reference to an alleged threat to kill Bennett's family.

The purpose of the criminal complaint is to apprise a defendant of the nature of the charges against him and permit him to prepare a defense. In these circumstances, the defendant cannot reasonably argue "that he was actually surprised at trial by the government's allegations." Commonwealth v. Geane, 51 Mass.App.Ct. 149, 151 (2001). Furthermore, the defendant did not request a bill of particulars and does not claim that he would have altered his defense in any way.

The defendant also claims that the instruction allowed the jury to convict the defendant on a different theory of culpability or of a crime with which he was not charged. The defendant misapprehends the distinction between "theories of culpability" and evidence. See Commonwealth v. Gendraw, 55 Mass.App.Ct. 677, 689 (2002). The details of the alleged threat against Lieutenant Bennett, whether to his person or to his family, were evidence of the crime of threatening to commit a crime and not alternative theories of culpability.

b. Burden of proof. The defendant claims that the judge shifted the burden of proof. In support of this argument, the defendant parses the instructions and takes them out of context. It is apparent, when the instructions are read in context as a whole, that they were correct and did not shift the burden of proof. Commonwealth v. Torres, 420 Mass. 479, 489 (1995). Furthermore, the curative instruction given by the judge regarding the prosecutor's reference in closing argument to the defendant's duty to prove duress emphasized "the proper burden of proof and adequately ensured that the jury [were] aware that the defendant bore no burden whatsoever." Commonwealth v. Giguere, 420 Mass. 226, 231-232 (1995).

c. Failure to instruct on malice. The judge properly declined the defendant's request that the jury be instructed on malice. "The term 'threat' is not statutorily

defined, but its elements have been held to 'include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." ' Commonwealth v. Troy T., 54 Mass.App.Ct. at 524, quoting from Commonwealth v. Robicheau, 421 Mass. at 183. Malice is not an element of threatening to commit a crime, even where that crime is murder. There is no requirement that the jury be instructed on the crime threatened. Compare Commonwealth v. Willard, 53 Mass.App.Ct. 650, 653-654 (2002) (judge not required to instruct jury on elements of intended felony when instructing on charge of breaking and entering with intent to commit a felony).

d. Failure to give a humane practice instruction. The defendant claims that the judge erred in not instructing the jury on the humane practice rule. [3] There was no error. First, the court has "never applied it [the rule regarding voluntariness] to statements made by a defendant during the commission of his crime." Commonwealth v. Boateng, 438 Mass. 498, 504 (2003). Second, the judge was not required to instruct the jury on the humane practice, as it was not a live issue at trial. Commonwealth v. Foster, 48 Mass.App.Ct. 671, 678 (2000).

e. Jury question. During deliberations, the jury asked whether carrying out a threat "mean[s] at the moment or in the future." The defendant did not object to the judge's answer to this question, so our review is limited to whether any error created a substantial risk of a miscarriage of justice. There was no error. The judge answered the jury in accordance with Commonwealth v. Ditsch, 19 Mass.App.Ct. at 1005. More was not required.

5. Ten year term of probation. The judge imposed a sentence of six months in the house of correction, thirty days to be served, from and after the sentence the defendant was then serving, with the balance suspended for ten years, subject to administrative, unsupervised probation with certain conditions. [4] At the sentencing hearing, the defendant specifically asked for "unsupervised probation with what other conditions." Nevertheless, the defendant now contends that the probation period is so disproportionate to the offense of threatening to commit murder that it rises to the level of a constitutional violation. [5]

Where the Legislature has given the judge broad discretion in determining the punishment of the offense, the burden is on the defendant to show that the sentence is disproportionate. Commonwealth v. Sanchez, 405 Mass. 369, 379 n. 7 (1989). The defendant has failed in this regard.

The length of the probationary period is permitted by G.L. c. 276, § 87. Furthermore, a sentencing judge may place a defendant on probation for a period that is "longer than the permissible period of imprisonment for the basic offense." Commonwealth v. Juzba, 44 Mass.App.Ct. 457, 460 n. 5 (1998). A review of the sentencing hearing reveals that the judge was focused on appropriate sentencing considerations. The ten-year probationary term does not "shock[ ] the conscience and offend[ ] fundamental notions of human dignity." Commonwealth v. Sanchez, 405 Mass. at 380, quoting from Commonwealth v. Jackson, 369 Mass. 904, 910 (1976).

Judgment affirmed.

[1] At the close of the Commonwealth's case, the judge asked defense counsel if

he had any motions, and defense counsel stated that he did not intend to file a motion for required finding of not guilty.

[2] The defendant also claims that the alleged threat was never communicated to any of Lieutenant Bennett's family. There was no such requirement. Lieutenant Bennett heard the threat and was the intended recipient of a threat to commit a crime against his family. Commonwealth v. Furst, 56 Mass.App.Ct. 283, 284 (2002) (threat must be communicated to intended victim).

[3] The defendant also argues that although the judge conducted a voir dire on whether the defendant's statements were the product of custodial interrogation, the judge erred in not conducting a voir dire on voluntariness.

[4] One of the conditions was that the defendant have no direct or indirect contact, outside of the correctional facility, with Lieutenant Bennett or his family.

[5] Unless the sentence is unconstitutional, we have no power to review an otherwise lawful sentence. Commonwealth v. Sanchez, 405 Mass. 369, 379-380 (1989).