UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MICHAEL K. DuPONT

        Petitioner (Applicant)

    V.                                CIVIL NO. 04-11431-GAO

DAVID NOLAN
  Office of the Attorney General

        Respondent


**MEMORANDUM IN SUPPORT OF APPLICATION FOR
CERTIFICATE OF APPEALABILITY**

It is a jurisdictional prerequisite in order to file an appeal from the denial or a dismissal of a habeas corpus application, an applicant must first seek and obtain a certificate of appealability from a circuit justice or a judge. 28 U.S.C. § 2253(c).

### I. Legal Standards for the issuance of a certificate of appealability and for the granting of a habeas corpus writ.

Certificate of Appealability

A certificate of appealability should issue if the applicant has "made a substantial showing of the denial of a constitutional right", 28 U. S. C. § 2253(c)(2), which has been interpreted to require that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U. S.473, 484, 120 S.Ct. 1595 (2000); *Miller-El v. Cockrell*, 537 U. S.322, 336, 123 S.Ct. 1029 (2003). Under this controlling standard, an applicant must show reasonable jurists could debate whether or, for that matter, agree that, the petition should have been resolved in a different manner or that the issues presented were

"adequate to deserve encouragement to proceed further". *Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 2569 (2004)

Thus the certificate of appealability determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. This preliminary threshold inquiry does not require a full consideration of the factual or legal bases supporting the claims.  The issue is simply the debatability of the underlying constitutional claim, not the resolution of that debate.  When a district court grants a certificate of appealability, it is "…informing the Court of Appeals that the applicant presents a colorable issue worthy of an appeal". *Slack v. McDaniel, 529 U.S. at 484.*

*"Any doubt regarding whether to grant a certificate of appealability is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination."*
*Miller v. Johnson*, 200 F.3d. 274, 280-281 (1st. Cir. 2000) citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983).

Considering this permissive standard this Court should issue the requested certificate of appealability to review the following issues raised in the application for a writ of habeas corpus:

**I.  Mass. Gen. L. ch. 127 § 129 was improperly applied to deny DuPont the entitlement to the statutory good time credits, an entitlement which implicated a liberty interest protected by the Due Process Clause of the United States Constitution, and:**

**II.  The controlling statute, Mass. Gen. L. ch. 127 § 129, did not provide DuPont with a fair warning that the statutory good time credits would be forfeited for any sentence imposed on a new offense when resident in a halfway house, or pre release facility, with an 90 day open reserve date for parole and:**

**III.  The forfeiture of the statutory good time credits pursuant to Mass. Gen. L. ch. 127 § 129 violated the federal constitutional principles set forth in** *United States v. Apprendi***, 530 U.S. 466 (2000) and** *Blakely v. Washington***, 542 U.S. 296 (2004).**

Different Standard for Granting of the Habeas Corpus Writ

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) changed the standards for granting federal habeas relief by prohibiting such relief unless a state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [this Court]," §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," §2254(d)(2). *Williams v. Taylor,* 529 U.S. 362, 404 120 S.Ct. 1495 (2000); *Brewer v. Quarterman*, 127 S.Ct. 1706, 1714 (2007).

## II.     Factual Background [1]

In 1971 DuPont received a sentence of fifteen to thirty years, and in 1981 a sentence of three to ten years to be served from and after the sentence then being served. In 1981 DuPont was paroled from the 1971 sentence to the 1981 sentence. DuPont was transferred to a pre release halfway house with a 90 day open reserve parole date February 12, 1985. However, on March 7, 1985 DuPont was involved in a series of offenses. In August 1986 these offenses resulted in a conviction and a sentence of thirty to forty years to run from and after the 1981 sentence then being served. In December 1987 DuPont's motion for a new trial on the 1971 conviction (fifteen to thirty years) was granted. Subsequently DuPont was re-sentenced to a term of ten to eighteen years for the 1971 conviction. In February 1988 DuPont was discharged on the 1971 sentence, retroactive to January 26, 1985.

---

[1]  A complete historical summary of the record is included in the applicant's habeas corpus memorandum, and a summary of this record is set forth in the Court's order and denial of the application for a habeas corpus writ based on *DuPont v. Commissioner of Correction*, 59 Mass.App.Ct. 908, 794 N.E.2d. 1254 (2003). An application for further appellate review was denied, *DuPont v. Commissioner of Correction*, 441 Mass 1102. (2004).

In August 1998 DuPont's motion for a new trial was granted on the 1985 charges, and yet, DuPont was held in custody as a pre trial detainee on the 1985 sentence. Without counsel representation, DuPont, over a year later, entered a change of plea to guilty in December 1999. Sentencing hearings were conducted January, 19 and 20, 2000 and March 14, 2000. On March 14, 2000 the court imposed a conditional sentence of thirty to forty years. The court reserved the right to revise and revoke this conditional sentence after a determination was made on whether DuPont was eligible to receive statutory good time credits on the this sentence, Mass. Gen. L. ch. 127 § 129.

At a further sentencing hearing, May 9, 2000, the court revoked DuPont's prior sentence of thirty to forty years due to the confusion about the applicability of the statutory good time credits. The matter was set for a further hearing. At the conclusion of the final sentencing hearing November 10, 2000, the court imposed a sentence of twenty years to twenty years and a day. DuPont was credited with 5727 days awaiting trial. After the imposition of these sentences, the court denied DuPont's motion to withdraw his guilty plea. The court denied DuPont the entitlement of 3000 days, almost eight years, of statutory good time credits under Mass. Gen. L. c. 127 § 129.

### III.   Issues Presented

*1.   Mass. Gen. L. ch. 127 § 129 was improperly applied to deny DuPont the entitlement to the statutory good time credits, an entitlement which implicated a liberty interest protected by the Due Process Clause of the United States Constitution.*

Legal Standard

The governing statute, Mass. Gen. L. ch 127 § 129 (repealed 1993) states:

*"If during the term of imprisonment of a prisoner confined in a correctional institution of the Commonwealth such prisoner shall commit any offense of which he is sentenced, he shall not be entitled to any deductions (for statutory good time) from the new sentence or sentences of imprisonment."*

There are four factors that must be present to invoke and apply this statute: 1) the person must be serving a term of imprisonment as a prisoner, 2) who is confined in a correctional institution of the Commonwealth, 3) and commits any offense of which (s)he shall be convicted and sentenced, and 4) that occurred during the term of her/his imprisonment.

Statutory Application to the Instant Matter

The applicant pressed two of these points both in the state and appellate state courts and in the habeas corpus petition; 1) whether he was serving a term of imprisonment when the new offense (1985) was committed and 2) whether he was confined **in a correctional institution** of the Commonwealth's Department of Correction. [2] No findings were ever made by the courts nor were any evidentiary hearings granted to determine if DuPont's placement in this halfway house constituted "confined in a correctional institution" as defined by the statute. [3] The Commonwealth was relieved of any burden of proof. Both the state appellate courts and the federal district court accepted, without findings or rulings, that this halfway house was indeed a correctional facility within the Department of Correction and DuPont was, in fact, "confined **in** a correctional institution". At DuPont's change of plea hearing, no judge, no jury, no standard of proof, no record of evidence for this forfeiture of the statutory

---

[2] The applicant requested an evidentiary hearing to determine if this pre release halfway house was in fact "being confined in a correctional institution of the Commonwealth".

[3] The relevant Massachusetts statutes are Mass. Gen. L. ch 127 §§ 48 and 49.
The commissioner of correction …subject to the rules and regulations in accordance with the provisions of § 49 may permit an inmate who has served such portion of his sentence or sentences that he would be eligible for parole within eighteen months to participate in education, training, or employment programs established **under § 48 outside a correctional facility**. A committed offender shall be under the direction, control and supervision of the correctional officers therein.

good time credits, however slight, supported this sentencing enhancement. *Commonwealth v. Latimore*, 378 Mass. 671, 678, 393 N.E.2d. 370 (1979).

The other issue then simply is whether this applicant was actually serving a sentence for which he was imprisoned on March 7, 1985, the date of the new offenses. He had been discharged from the 1971 sentence effective January 26, 1985, some forty days or six weeks prior to the March 7th offense. If DuPont should not have been at this halfway or pre release facility, then the statutory good time credits should not have been forfeited. This point was hotly debated at the sentencing hearings. The transcripts reveal:

January 19, 2000, the court commented: *"I must say, the indications that I have seen, show that he [DuPont]) was entitled to credit... from the date of his (03-07-85) arrest*.

March 14, 2000, the prosecutor said: *"Your Honor, if I also, just for a point of information if in fact on the thirty to forty, twenty to serve, if in fact the DOC determines that he was serving a sentence at the time this crime was committed, then he would do twenty years. If it determines he was not doing—serving a sentence and statutory good time kicks in, that comes off the twenty years. He would walk out the door.*

*Thirty to forty, his parole eligibility is twenty years which is in another five years. Right now, with the sentence the court has imposed the statutory good time comes off the time to serve which, roughly at forty percent of twenty years in my logic, is twelve years, Your Honor. Eight years off the top, twelve years. In effect, if the court considers March 7th the start date, 1985, he had wrapped up that sentence."*

On May 9, 2000 the Department of Corrections attorney stated: *"Although I think it is clear that this remains a crime while incarcerated, I also think this case raises more of a question pre-imposition of sentence than I have seen in my twelve years of handling these types of cases as to what the sentence might ultimately mean. And I think that is an extremely unfortunate position for the defendant, the prosecution and the court."*

*"It took some time to sort out factually, and I can't say I've entirely completed it, but I've completed it enough to feel I understand the basic parameters."*

And then this attorney responded: *"...it would be hard, I think, to be positive in this situation of whether this sentence would or would not receive statutory good time*

*irrespective of the position or even the correctness of the position of the Department of Correction if it is appealed on that issue.*

*And my suggestion, it is not an easy one, but it is about the only one I can see, is I would recommend that the specific issue be reported to the appellate courts in a sense before the sentence is finalized. I mean, the sentence may have to be imposed to report it."*

*"On a twenty year sentence, we're talking about eight years. That's not the kind of thing that anybody involved in the sentencing should be in doubt about before the sentence is imposed or when it is imposed."*

The state sentencing court proceeded to apply the statute and denied any statutory good time credits. DuPont was sentenced to twenty years to twenty years and a day. With the forfeiture of the statutory good time credits that sentence was more consistent with the earlier imposed and revoked thirty to forty year sentence.

To affirm the judgment of the sentencing court, the state appellate courts and this federal district court have relied on *Commonwealth v. Hughes*, 364 Mass. 426, 428-429, 305 N.E.2d. 117 (1973) (court interpreted Mass. Gen. L. ch. 127 § 90A that a furloughed prisoner is still within the custody of a correctional facility and subject to the provisions of Mass. Gen. L. ch. 127 § 129) for the lower court's decision to deny DuPont the statutory good time credits. The courts held DuPont was within a correctional facility, and, DuPont had fair notice of a forfeiture of the statutory good time credits if there were to be a new offense. This reliance was misplaced. DuPont had been guided by *Amado v. Superintendent, MCI Walpole,* 366 Mass. 45, 48, 314 N.E. 2d. 432 (1974), a later opinion, in which the Supreme Judicial Court held Mass. Gen. L. ch. 127 § 129 applied to <u>an offense committed while in a prison</u>". [4] It was not until *Nimblett Commissioner*, 20 Mass.App.Ct. 988, 989, 482 N.E.2d. 1192 (1985) (prisoner on work release is confined in a correctional institution even though the holding facility is outside the walls of a prison),

---

[4] The *Amado* decision was in 1974 after *Hughes* in 1973, and stressed the term *"in prison"*.

decided six months after March 7, 1985, did the appellate court define "in prison" as being held in "constructive custody". *Hughes* is not sufficient to give notice to DuPont he was "confined **in a correctional facility**", especially after the decision in *Amado*. A furlough is exactly that, an authorized temporary release from custody with a particular set of conditions approved by the Department of Corrections. Mass. Gen. L. ch. 127 §90A. The appellate courts bootstrapped its decision in *DuPont* by citing *Nimblett* [5] The *Nimblett* court advised: "***Once the proper interpretation of § 129 is determined (as we have done for the first time in this opinion)*** any possible claim that section constitutes an ex post facto law falls by the wayside." This was an unforeseeable interpretation of judicial construction of a statute that changed "in" and "imprisonment" to "a constructive custody setting" outside of the prison walls, and, the courts applied this, admittedly new concept of custody, retroactively to DuPont. *United States v. Lanier,* 520 U.S. 259, 266-267 (1997); *United States v. Councilman,* 418 F.3d. 67, 83-85 (1st. Cir. 2005).

Reasonable jurists could debate, at least, three of the issues raised; 1) was DuPont "confined in a correctional institution" within its statutory meaning in 1985 when the offenses occurred; 2) was DuPont actually serving a term of imprisonment when the 1985 offenses occurred, and, 3) was there a new concept of custody within *Nimblett* an unforeseeable judicial construction applied retroactively to DuPont.

2. *The controlling statute, Mass. Gen. L. ch. 127 § 129, did not provide DuPont with a fair warning that the statutory good time credits would not be applicable to any sentence imposed on a new offense while he was resident in a halfway house, or pre release facility, with an 90 day open reserve date for parole.*

There was no mention in the indictments that DuPont was a resident of a pre release halfway house located in Suffolk County or that he was in custody when these

---

[5] The court changed the meaning of the word "in" to include "outside of" a prison in <u>Nimblett</u>.

new offenses occurred in order for him to be subject to an enhancement of the sentence. The indictments simply stated DuPont was a resident of Woburn.

The Fifth and Sixth Amendments to the United States Constitution and Article 12 of the Massachusetts Constitution Declaration of Rights guarantee to an accused that the charging document will allege all the elements of the offense. The Sixth Amendment "requires that the defendant be informed of the nature and cause of the accusation." *United States v. Calderon*, 77 F.3d 6, 9 (1st. Cir. 1996) (citations omitted). "[I]n general, an indictment is sufficiently particular if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which (s)he must defend, and enables him/her to plead double jeopardy in bar of future prosecutions for the same offense. See *Hamling v. United States*, 418 U.S. 87 (1974)." *United States v. Sepulveda,* 15 F.3d 1161, 1192 (1st. Cir. 1993).

In a concurring opinion in <u>Apprendi v. New Jersey</u>, 120 S.Ct. at 2368 Justice Thomas commented if a legislature defines a crime and then provides for increasing the punishment of that crime on a finding of some aggravating fact, the crime and the aggravating fact together constitute an aggravated crime. The aggravating fact is an element of the offense, not a sentencing enhancement, and the accused must be so advised. Thus, as with DuPont, the offense of robbery and the application of the statute, Mass. Gen. L. ch. 127 § 129, to deny any statutory good time credits, a loss of liberty of almost eight years, constituted an aggravated offense which was never charged in the indictments, admitted to by DuPont nor encompassed by his guilty plea. This enhanced sentence or aggravated offense violated DuPont's Sixth Amendment rights made applicable to the States by the Fourteenth Amendment.

To further exacerbate the matter, the process to determine the applicability of this statute was muddled because the sentencing court, the prosecutor, the Department of Correction lawyer and defense counsel could only guess at what was the legislative intent should have been in the factual pattern of this case.

In looking at a penal statute to ascertain if the statute gives a fair warning of the conduct subject to its penalties, there are three related branches to assess the sufficiency of a warning that need to be considered; lenity, vagueness and judicial gloss. The first is the rule of lenity, and the second vagueness. These two branches are interrelated. The rule of lenity applies if the penal statute has a grievous ambiguity or uncertainty. Clearly Mass. Gen. L. ch. 127 § 129 had been ambiguous and its meaning has been undergoing various interpretations as to what constitutes "in prison:" and in "constructive custody". If the statute is vague, this vagueness may bar enforcement, but only if it is so vague that men of common intelligence must necessarily guess at its meaning and differ in its application. At DuPont's sentencing hearings, men, not only of common intelligence, but a judge, a prosecutor and an attorney for the Department of Correction, all trained and experienced in the law, could only express doubt as to the applicability of this statute. The ambiguity and the vagueness were apparent at the sentencing hearings. As it was done in the instant matter, the court glossed over this otherwise uncertain statute and attempted to attain the requisite clarity, but due process should bar any court from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope. *United States v. Lanier,* 520 U.S at 266. In the various tests to determine if DuPont was provided with a

fair warning of this statute's applicability, which when applied constituted an aggravated offense, it is obvious DuPont had no fair warning.

*3. The forfeiture of the statutory good time credits violated the federal constitutional principles set forth in* **United States v. Apprendi**, *530 U.S. 466, 120 S.Ct. 2348 (2000) and* **Blakely v. Washington**, *542 U.S. 296 124 S.Ct. 2531 (2004).*

<u>Legal Standard under Apprendi and Blakely</u>

This Supreme Court held in *Apprendi* v. *New Jersey,* 530 U. S. at 474-476 other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. [6] It was not until the decision in *Blakely* did the Supreme Court clarify the meaning of statutory maximum for *Apprendi* purposes. *Blakely,* 124 S.Ct. at 2537. Prior to the issuance of *Blakely,* the federal circuit courts, as well as it appears in the instant matter, unanimously believed the "statutory maximum" was the greatest sentence permitted by *the statute of conviction,* irrespective of what fact-finding the court conducted to impose that sentence. However, the Supreme Court's decision in *Blakely* held the maximum statutory sentence for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected by the jury verdict or admitted by the defendant, or by plea stipulation*", not the maximum set by the state's applicable criminal statute *Blakely,* 542 U.S. at 303. Thus the *Blakely* Court reaffirmed *Apprendi* and required all the facts "…which the law makes essential to the punishment be subject to the Sixth Amendment protections." In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> any additional findings. When the court inflicts

---

[6] The decision in *Apprendi* was foreshadowed in *Jones v. United States,* 526 U.S. 227, 244-248, 119 S.Ct. 1215 (1999*).*

punishment that the jury's verdict has not found or the defendant's plea has not admitted, all the necessary facts "which the law makes essential to the punishment," the sentencing court has exceeded its proper authority. *Blakely.* 124 S.Ct. at 2537 (citations omitted). It should make no difference whether guilt is determined by a jury or by a plea in most instances. The relevant question is whether the required factual finding, even though overwhelming evidence may point in that direction, exposes the defendant to a greater punishment than that authorized by the guilt determination.

  *Apprendi-Blakely* Analysis Applied to the Instant Matter

  To properly comply with *Blakely* and the Constitution, the sentencing court had to determine whether the application of Mass. Gen. L. ch. 127 § 129 was a detail of the offense as charged or an element of separate, uncharged crime. *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546 (2006). Mass. Gen. L. ch. 265 § 17 provides a sentence of life imprisonment or any term of years for armed robbery. Mass. Gen. L. ch. 127 § 129 permits a forfeiture of statutory good time credits on any new offense committed if certain requirements are satisfied. This statutory wording, "confined in a correctional institution", has a custody element making a new offense an "aggravated offense" that either had to be waived in a guilty plea colloquy or proven beyond a reasonable doubt before a jury to be in accord with the holding in *Apprendi*.. These are two separate statutes. The latter was not charged, and proper notice of this statute was not afforded to this applicant.

  This highly disputed custody status element been addressed by a number of other courts under an applicable *Apprendi-Blakely* analysis. *State v. Cupid*, 361 N.C. 325, 330, 646 S.E.2d. 348 (2007) (defendant admitted on probation when offense committed); *State*

*v. Spencer*, 203 Or. App. 463, 125 P.3d. 849, 850 (9th Cir. 2005) ("on parole at the time of the offense" parole status found to be an aggravated sentence element with court finding plain error and vacating the sentence); *State ex rel Smith v. Conn*, 209 Ariz. 195, 98 P.3d. 881, 882-884 (9th. Cir. 2004) (appeals court granting prosecution motion to amend indictment to add aggravated sentencing element of an offense committed while on bail status to comply with *Blakely*; defendant must know full extent of potential punishment before deciding to enter guilty plea; parole or other release status is in the nature of an aggravating circumstance); State v. Wissink, 172 N.C.App. 829, 617 S.E.2d 319, 324-325 (2005) (offense committed on probation status found to be an element subject to *Apprendi-Blakely* analysis.

The applicant's custody status, as defined in Mass. Gen. L. ch. 127 § 129, is an *Apprendi-Blakely* aggravating element protected by the Sixth Amendment. Before the entry of the plea of guilty, DuPont should have received notice the Commonwealth intended to allege his release status to enhance his punishment. Not only was this notice not provided to DuPont, but when he entered his guilty plea, some fifteen years after the offense occurred, he relied on the plea agreement that the statutory maximum was limited to a twenty year maximum. If the sentence imposed by the court exceeds the plea agreement recommendation, the court is required to vacate the plea. [7] Mass. Rules of Criminal Procedure Rule 12 and relevant Massachusetts case law. *Commonwealth v. Przyck*, 41 Mass.App.Ct. 195, 196. 668 N.E.2d. 1358 (1996). The sentence so imposed should be reversed and a sentence expiration date of approximately eight years prior to DuPont's actual 2005 release must be declared with an order entered for a certificate of discharge dated 3000 days prior to February 26, 2005.

---

[7] At his sentencing November 10, 2000, DuPont's motion to withdraw his guilty plea was denied.

14

**Conclusion**

This Court should grant the certificate of appealability as to each issue.

Dated: March 25, 2008

                              MICHAEL K. DuPONT

                              By:

                              /s/ Lois M. Lewis
                              Lois M. Lewis  (298580)
                              74 Fuller Terrace
                              West Newton, MA 02465
                              Tel: 617.969.4854

       Certificate of Service

I hereby certify that this document filed
through the ECF system will be sent electronically
to the registered participants as identified on the Notice
of Electronic Filing (NEF) and paper copies will be
sent to those indicated as non registered participants on
March 25, 2008.


/s/ Lois Lewis
Lois Lewis