UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11431-GAO

MICHAEL KEVIN DUPONT,
Petitioner

v.

DAVID NOLAN,
Respondent

OPINION AND ORDER
February 25, 2008
Revised April 22, 2008

O'TOOLE, D.J.

**I.    Background**

The petitioner, Michael Kevin DuPont, seeks a writ of habeas corpus from this Court under 18 U.S.C. § 2254. Before turning to his claims, it is useful to summarize his relevant criminal history. The summary is from the opinion of the Massachusetts Appeals Court denying his state petition for a writ of habeas corpus, DuPont v. Comm'r of Corr., 794 N.E.2d 1254, 1255–56 (Mass. App. Ct. 2003)[1]:

---

[1] DuPont's direct appeal of his armed robbery conviction was denied by the Massachusetts Appeals Court, Commonwealth v. DuPont, 795 N.E.2d 12 (Mass. App. Ct. 2003), and the Supreme Judicial Court ("SJC") denied his application for further appellate review, Commonwealth v. DuPont, 803 N.E.2d 332 (Mass. 2004). DuPont also filed a petition for habeas corpus in 2001 pursuant to Mass. Gen. Laws ch. 248, § 1 in Worcester Superior Court, seeking a re-calculation of good-time credits, which was denied and subsequently affirmed on appeal by the Massachusetts Appeals Court, DuPont, 794 N.E.2d at 1259. The SJC denied his application for further review on January 29, 2004. DuPont v. Comm'r of Corr., 803 N.E.2d 333 (Mass. 2004), cert denied 542 U.S. 943 (2004).

[T]he first batch of convictions and sentences imposed on DuPont occurred in 1971 and 1972. For armed robbery, DuPont received a sentence on October 27, 1971, of fifteen to thirty years. On March 13, 1972, DuPont was convicted of breaking and entering and larceny. There were further armed robbery convictions on June 29, 1972, and September 21, 1972. The sentences for these crimes—they involved separate criminal episodes in different places—ran concurrently with the 1971 sentence. For convenience of reference, we shall refer to these convictions collectively as the 1971 sentences.

On November 7, 1980, DuPont was paroled. In short order he was under arrest for breaking and entering and several other crimes, resulting in revocation of his parole on December 10, 1980. As to these charges he was convicted and on March 12, 1981, received a second set of sentences (the 1981 sentences), to run "from and after sentence now serving."

About nine months later, on December 23, 1981, DuPont was paroled from the 1971 sentences to the consecutive 1981 sentences: i.e., he began serving the 1981 sentences before the expiration of the 1971 sentences. On May 21, 1984, he was placed on parole, and on the street, from the 1981 sentences. Within a month, specifically on June 23, 1984, DuPont was arrested on charges of receiving stolen property, possession of unlawful drugs, and unlawful possession of a firearm. This resulted in DuPont's return to custody on the 1971 sentences and the violation of the parole from the 1981 sentences served as a detainer. The parole revocation warrant on the 1981 sentences was withdrawn on January 22, 1985, and on February 12, 1985, DuPont was assigned to a prerelease halfway house called the 577 House. He had not been there a month when he was involved on March 7, 1985, in a criminal episode that led to his conviction of armed robbery, assault and battery by means of a dangerous weapon, armed assault with intent to kill, and lesser offenses. For the armed robbery, DuPont drew a sentence of thirty to forty years (the 1986 sentences), to run from and after sentences then being served.

DuPont's sentencing picture, already complicated, became more so on December 4, 1987, when a motion for a new trial on the 1971 armed robbery charge (fifteen to thirty years) was allowed. Thereupon DuPont entered a plea of guilty and received a revised sentence of ten to eighteen years. He was now entitled to be discharged from custody under the 1971 sentences and that occurred on February 4, 1988, to be effective as of January 26, 1985. There was also a revision of the 1986 sentences (for the 1985 crimes committed while he was in the prerelease halfway house) following another successful motion for a new trial by DuPont. On December 13, 1999, DuPont entered a plea of guilty as to the March 7, 1985, crimes. Sentencing on that plea did

not occur until November 10, 2000, on which date a Superior Court judge imposed a new sentence on the 1985 armed robbery of twenty years to twenty years and one day and lesser concurrent sentences on the other crimes committed in 1985.

DuPont claims that he was wrongly denied approximately 3,000 days of good time credit against his 1985 armed robbery sentence by reason of the operation of a state statute, since repealed but applicable to his offense because it was effective as of the date of the offense. The statute, Mass. Gen. Laws, ch. 127, § 129 (repealed 1993) provided: "If, during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any [statutory good time] deductions hereunder from the new sentence or sentences of imprisonment." DuPont claims that the forfeiture of statutory good time credit violated the federal constitutional principles articulated in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004). He also claims that the statute was unconstitutionally vague as applied to him, because it did not give him "fair notice" that a crime he committed while on escape from a halfway house would be considered a crime committed by a "prisoner confined in a correctional institution of the commonwealth," as the statute provides. There is no merit to either claim.[2]

---

[2] DuPont suggests an additional argument that the Equal Protection Clause of the Fourteenth Amendment is somehow implicated, but he does not even remotely explain why. He also lists as an "issue presented" his transfer to a more secure institutional facility without a hearing and the revocation of his reserve parole date without appropriate safeguards. These arguments, though they may at first blush seem to hint at a claim of a denial of procedural due process, actually appear directed at a purely state law argument that Lynch, petitioner, 400 N.E.2d 854 (Mass. 1980) applies to DuPont. Accordingly, neither of these issues presents a basis for federal habeas relief.

## II. Standard of Review

To be entitled to a writ of habeas corpus DuPont must show either that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," id. § 2254(d)(2).

A decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "[i]f the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., Opinion of the Court). An "unreasonable application" of Supreme Court precedent occurs if a state court correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. Id. at 407. An unreasonable application of Supreme Court precedent is one that is objectively unreasonable, as distinct from one that is merely incorrect. Id. at 410. The First Circuit has explained that "[s]ome increment of incorrectness beyond error is required." McCambridge v. Hall, 303 F.3d 24, 36 (1st. Cir. 2002) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)). The degree of incorrectness "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id.

### III.  Mootness

A habeas corpus petitioner must be "in custody" when the petition for habeas corpus relief is filed. 28 U.S.C. § 2254(b) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). DuPont was released from imprisonment on February 26, 2005, and the respondent argues in his brief that the petition became moot since DuPont was no longer in custody. However, he remains under yet another sentence, imposed for a 1999 conviction, that is suspended until 2011 with administrative, unsupervised probation. If his claims relating to his sentence for the 1985 armed robbery conviction were meritorious, he might have an argument that would accelerate the completion of the probation on the 1999 offense. At the hearing on the petition, the respondent conceded that DuPont's petition is not moot.

### IV.  Apprendi-Blakely

DuPont argues that the factual basis for denying his good time credits on his armed robbery sentence — that he committed the offense while "confined in a correctional institution" – is an aggravating fact that, under Apprendi and Blakely, must be alleged in the indictment and proved beyond a reasonable doubt. This could only be true, however, if reliance on the fact resulted in a sentence greater than the otherwise applicable statutory maximum. See Blakely, 542 U.S. at 303-4; Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The relevant "statutory maximum" is the maximum sentence that could be imposed on the facts alleged in the indictment and admitted (in this case by his guilty plea)

5

by the defendant. Under Massachusetts law, the statutory maximum sentence for armed robbery was (and is) life imprisonment. Mass. Gen. Laws ch. 265, § 17; Mass. Gen. Laws ch. 265, § 17 (1984), amended by 1998 Mass. Acts 388. The application of § 129 and the consequent forfeiture of good time credits did not result in a sentence above the otherwise applicable statutory maximum. The sentence was neither contrary to, nor an unreasonable application of, Apprendi and/or Blakely.

**V.     Fair Warning**

The Due Process Clause requires that a criminal statute must provide a fair warning of what conduct it proscribes. See U.S. v. Lanier, 520 U.S. 259, 265 (1997); U.S. v. Hussein, 351 F.3d 9, 13 (1st Cir. 2003). A statute so vague that persons of common intelligence can only guess at its meaning may not be enforced (the vagueness doctrine), courts may not retroactively expand the statutory language to encompass "conduct that neither the statute nor prior judicial decision has fairly disclosed to be within its scope," and the defendant should be given the benefit of the doubt as to any grievous ambiguity (the rule of lenity). U.S. v. Lanier, 520 U.S. at 266; U.S. v. Councilman, 418 F.3d 67, 83–85 (1st Cir. 2005).

DuPont argues that Mass. Gen. Laws ch. 127, § 129 failed to provide him with fair warning, that he could be considered to be "confined in a correctional institution" so that he would stand to lose his good-time credits on any new sentence if he were to commit a crime during his tenure as a resident of (and by extension while on escape from) a half-way house. His argument centers on Nimblett v. Comm'r of Corr., 482 N.E.2d 1192 (Mass. App. Ct. 1985) in which the Massachusetts Appeals Court held that an inmate who commits an offense while outside a correctional institution on a work-release program nonetheless qualifies as a person "confined in a correctional institution" for purposes of § 129. The significance of the decision, DuPont says, is that the Appeals Court noted

that it was deciding the question "for the first time in this opinion," id. at 1192, which was issued *after* he committed the armed robbery, so that when he committed the armed robbery, the statutory phrase had not yet been explicated and therefore the statute was unconstitutionally vague. Accordingly, he argues that the application of § 129 to deny him good time credit was an unforeseeable retroactive judicial expansion of the law.

The fact that prior to DuPont's 1985 crime the Massachusetts courts had not expressly addressed the scope of the crucial statutory phrase "confined in a correctional institution" does not mean that the phrase was unclear or misleadingly vague. As the Appeals Court pointed out in affirming the denial of DuPont's application for state habeas relief, Massachusetts statutes define the term "correctional institution" to mean "correctional facility," which in turn is defined as "any building, enclosure, space or structure used for the custody, control and rehabilitation of committed offenders and of such other persons as may be placed in custody therein in accordance with law." Mass. Gen. Laws ch. 125, § 1(e) and (d). The court correctly noted: "The halfway house was a confining place of rehabilitation and comfortably fits within the definition of 'correctional facility' and 'correctional institution' that appears in G.L. c. 125 § 1." 794 N.E.2d at 1257. In other words, at the time of DuPont's crime it was clear from the statutes alone, without need for the confirmation later given by the Appeals Court in Nimblett, that the confinement in a halfway house constituted confinement in a correctional institution. The court also noted that in Commonwealth v. Hughes, 305 N.E.2d 117, 119–21 (Mass. 1973), the SJC held that a prisoner who escaped from furlough could be convicted under a statute punishing escape from a "penal institution." This provided further guidance as to the scope of § 129, well before DuPont's 1985 crime. 794 N.E.2d at 1257. There was no retroactive judicial expansion of the law, never mind an unforeseeable one, and DuPont had fair

7

warning that if he committed a crime while committed to the halfway house he would not be entitled to good time credits pursuant to § 129.[3]

### VIII. Conclusion

For the foregoing reasons, the petitioner has not shown that the state courts' adjudication of any of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). His petition for habeas corpus is therefore DENIED.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
    United States District Judge

---

[3] DuPont also cites some evident confusion of the sentencing judge and prosecutor about whether § 129 applied to DuPont as evidence that one of common intelligence would not be on notice as to the scope or effect of the statute. However, the fact that during a sentencing colloquy they may have been uncertain, off the top of their heads, about the precise scope of a statutory term surely is not enough to warrant a conclusion that the statute must have been impermissibly vague.